Clyde **DILLON**, Appellant,

v.

Anthony J. **CELEBREZZE**, Secretary of Health, Education, and Welfare, Appellee.

No. 9763.

United States Court of Appeals Fourth Circuit.

Argued March 5, 1965.

Decided May 4, 1965.

---

Clay S. Crouse, Beckley, W. Va. (E. Carl Meadows, Jr., Beckley, W. Va., on brief), for appellant.

Harvey L. Zuckman, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., and Sherman L. Cohn, Atty., Dept. of Justice, and Donald P. Moore, U. S. Atty., on brief), for appellee.

Before SOBELOFF and J. SPENCER BELL, Circuit Judges, and LARKINS, District Judge.

J. SPENCER BELL, Circuit Judge.

This is an appeal from an order of the district court dated and filed October 6, 1964, which granted the Secretary's motion for summary judgment and affirmed a decision of the hearing examiner denying the claimant, Clyde Dillon, a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C.A. §§ 416(i) and 423.

The examiner, after considering the evidence introduced before him at a hearing on May 9, 1961, concluded that it

"certainly do[es] not show that the claimant's impairments in combination had reached a stage of severity to preclude substantial gainful employment when he last met the earnings requirements—March 31, 1960."

The Appeals Council affirmed the examiner's decision on July 31, 1961. On review, the district judge upheld the Appeals Council. Considering the record before us as a whole, we do not think it contains substantial evidence to support the prior rulings adverse to the claimant. Accordingly, these rulings must be reversed.

The claimant was born on May 20, 1906, and was fifty-four years old when

he filed the disability claims presently in issue. His education is limited to writing his name, and he cannot read. He has worked most of his adult life as a coal miner, but he was laid off in June, 1958, when the mine at which he was employed at the time closed down.[1] Attempts to locate other employment after this layoff were unsuccessful.

Dillon asserts that he was disabled, as that term is used in the Social Security Act, when his insured status expired because of a combination of impairments to his heart, back, and lungs. Without intending to minimize in any way the seriousness of his lung difficulties, the claimant, through his counsel, placed primary emphasis before us upon his heart and back conditions. In support of his assertions, counsel for Dillon has directed our attention to the reports of the several doctors who examined the claimant between 1959 and 1961.

Because both parties to this suit have placed such emphasis upon the objective medical findings, we deem it appropriate to restate what this court has observed before—that clinical medical reports are not necessarily dispositive of the question of a claimant's disability. Thus, we said in Underwood v. Ribicoff, 298 F.2d 850, 851 (1962):

"For the purpose of making a finding of fact on this issue [disability], the fact finder must recognize the obvious interrelation of [the various] elements of proof. The objective medical findings may show more or less clearly the existence of certain clinically determinable physical or mental impairments. However, *a recitation of objective, clinical findings will seldom show, without more, the over-all effect of these impairments on a particular individual.* This is a matter of medical judgment to be decided with reference to the individual's general physical condition and the state of development of

each of the defects." (Emphasis added.)

In the Underwood case, we pointed out that there are really four elements of proof to be considered in determining whether a claimant is disabled within the meaning of the Social Security Act: (1) the objective medical facts, which are the clinical findings of the treating and/or examining physicians divorced from their expert judgment or opinions as to the significance of these clinical findings; (2) the diagnoses and expert medical opinions of the treating and examining physicians on subsidiary questions of fact, such as the effect of clinically determinable impairments upon an individual; (3) the subjective evidence of pain and disability testified to by the claimant and corroborated by his wife, other members of his family, his neighbors, and/or others in a position to observe him; and (4) the claimant's age, educational background, and work history. We proceed to a consideration of the evidence in this case in the light of these elements of proof.

We think it of significance that every doctor who examined Dillon reported some medically determinable physical ailment. To be sure, their evaluation of his condition varied to some extent, and some of the doctors emphasized different aspects of his problems. Several of the doctors who examined the claimant filed more than one report; without exception their later reports noted that the conditions which they had observed during their initial examinations not only still existed but they had worsened with the passage of time.

The first physician to examine Dillon whose report is a part of this record was Dr. Philip Preiser, an internist in Charleston, West Virginia. He filed two reports, dated March 14 and October 26, 1959, in which he stated that his patient was suffering from arteriosclerotic heart disease, coronary sclerosis, angina pectoris, and chronic bronchitis. In the lat-

---

1. The claimant maintains that even if the mine had not been closed in 1958, he would have had to stop working because of his heart and back conditions.

ter report, he also reported evidence of peribronchial fibrosis and emphysema and added early nephrosclerosis to his previous diagnoses. Dr. Preiser's reports also noted that the claimant experienced considerable pain and tired quickly with any effort, and he recommended a limitation in activities to the claimant's tolerance. He indicated that Dillon on occasion might have to take nitroglycerin in order to get relief from pains in his chest.

A report dated November 11, 1959, of an X-ray of claimant's lumbosacral spine by Dr. Todd, a radiologist in Charleston, West Virginia, stated that moderately advanced to vast hypertrophic changes about the margins of the lumbar bodies in that area had occurred. Dr. Todd also noticed a narrowing of the distance between some of the vertebrae, some of which he attributed to back injuries which Dillon apparently had suffered in mine accidents in 1925 and 1957. Three reports several months subsequent to the expiration of Dillon's insured status confirmed Dr. Todd's findings. Dr. W. V. Wilkerson in a report dated November 11, 1960, mentioned several times that Dillon was experiencing persistent back pains due to the effects of arthritis upon an old fracture of the lumbar spine. Dr. Wilkerson at this time was of the opinion that his patient was "physically unable for manual labor." In a report on April 12, 1961, he stated that an X-ray of the lumbar spine showed an advanced spur formation and suggested the presence of a degenerated disc lesion. On March 3, 1961, Dr. Ilona Scott reported that

> "marked degenerative changes with early bridge formation is [sic] seen between the vertebrae. The apophyseal joints are irregular, show considerable narrowing of the cartilagenous spacings and sclerosis at the joint surfaces. The disc space shows a marked narrowing at L5–S1, the remainder of the disc spacings are normal. A degenerated disc is suspected at L5."

In addition to Dr. Preiser, at least four other doctors included comments and observations in their reports which established the existence of pulmonary and bronchial difficulties. Even Dr. William C. Stewart, whose report on September 21, 1960, was probably the report most favorable from an overall standpoint to the Secretary, conceded that Dillon had a "slight to moderate pulmonary disability."

In addition to the medical reports, there was testimony at the hearing that the claimant experienced severe and frequent heart and back pains, that he took nitroglycerin with some regularity for the relief of pain, that he had shortness of breath, that exercise was painful and even walking quickly exhausted him, that his activities had been so restricted due to his condition that he could no longer work in the garden or even pick up a quart pail of water, and that he had lost twenty-five pounds between 1958 and the time of the hearing. Far from disbelieving these statements, the hearing examiner indicated that he had the greatest of sympathy for the claimant and that he realized how uncomfortable his back and heart conditions made him feel at times.

The examiner was apparently persuaded that the claimant was not entitled to a disability status by the reports of several physicians, particularly Drs. Stewart and McKenzie, which dealt primarily with Dillon's heart condition. These doctors stated that they could find no objective indications that Dillon's heart was impaired or that he had any heart disease. They reported that there was no heart enlargement, that no murmur could be heard, that the rhythm was regular, and that electrocardiograms were within normal limits.

The examiner's treatment of these reports, however, reveals the error we think he committed in deciding this case. We note parenthetically that we have no quarrel with the law upon which the examiner relied; it was in his application of the proper legal standards to the facts of this particular case that

we feel he erred. We think the examiner so fragmentized Dillon's several ailments and the medical opinions regarding each of them that he failed properly to evaluate their effect in combination upon this claimant. It is not even questioned that Dillon had lung and back conditions which would qualify as "medically determinable physical or mental impairment[s]," [2] and although there is some conflict in it, there is ample evidence in this record to support an assertion that the claimant's heart condition likewise was a medically determinable physical impairment. Furthermore, the question of whether a claimant is disabled, as that term is used in the Act, is an inquiry which must be directed to *that particular individual,* not to a theoretical average man or even to an average claimant. Thomas v. Celebrezze, 331 F.2d 541, 545 (4 Cir. 1964).

Clyde Dillon, the claimant in this case, not only had the three medically determinable physical impairments previously mentioned, but these conditions caused him to experience frequent and severe pain and severely restricted the activities in which he could engage. We think it a wholly unrealistic application of the statutory standards to hold that an illiterate person of fifty-four whose only previous work experience involved the hard manual labor of coal mining and who was suffering under the cumulative psychological and physical handicap of these disabilities could be expected to obtain, much less to perform, any substantial gainful activity. To deny this claimant the disability relief afforded by the Social Security Act in our opinion would frustrate the very purpose for which Congress enacted this legislation.

Viewing the record in this case as a whole, we do not think it contains substantial evidence to support the examiner's conclusion that the combination of Dillon's ailments had not reached such a stage of severity on March 31, 1960, that he was precluded from engaging in any substantial gainful activity.

The judgment of the district court is reversed and vacated, and the cause is remanded for the entry of summary judgment in favor of the claimant.

Reversed and remanded.

---

2. An essential element of "disability," as that term is defined in 42 U.S.C.A. § 416(i).