Mrs. Ruby SWIHEL, Plaintiff,

v.

Elliott RICHARDSON, Secretary of
Health, Education and Welfare,
Defendant.

Civ. No. 71-0-245.

United States District Court,
D. Nebraska.

June 23, 1972.

Edward J. McCarthy, of Harmon &
McCarthy, Omaha, Neb., for plaintiff.

Thomas D. Thalken, Asst. U. S. Atty.,
D. Neb., for defendant.

## MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Senior District Judge.

THIS MATTER comes before the Court upon cross-motions for summary judgment to review the final decision of the Secretary of Health, Education, and Welfare, denying the plaintiff's application for disability insurance benefits.

■ The review is limited to ascertaining whether on the whole record there is substantial evidence to support the Secretary's findings. Sullivan v. Finch, 315 F.Supp. 1252 [W.D.Pa.1970]. This standard also extends to any inferences and conclusions drawn from the findings. Hoffman v. Ribicoff, 305 F. 2d 1 [8th Cir. 1962]. Of course the Secretary must apply the correct legal standards when resolving the factual issues and drawing the inferences therefrom. Weaver v. Finch, 306 F.Supp. 1185 [D.C.Mo.1969], or as stated in Celebrezze v. Wifstad, 314 F.2d 208, 210 [8th Cir. 1963]:

> "Judicial review . . . demands that a reviewing court satisfy itself 'that the agency determination has warrant in the record, viewing that record as a whole, and a reasonable basis in law' therefor . . . The performance of that judicial function can only be accomplished by a 'case-to-case consideration' [citations omitted]."

Thus "[T]he Secretary's findings of fact and the reasonable inferences drawn therefrom are conclusive and binding if supported by substantial evidence." McCalip v. Richardson, 460 F. 2d 1124 [8th Cir. 1972].

In this present action the claimant's initial application for disability insurance benefits was filed September 23rd, 1969, and was denied. Upon reconsideration the determination was affirmed. A hearing was requested and subsequently held on January 14th, 1971, at which the plaintiff, Ruby Swihel, and her sister, Ella Mae Stacey, were present and testified. The plaintiff was not represented by counsel at that time.

The Hearing Examiner concluded that "[T]he evidence has failed to establish that the claimant was suffering from an impairment of the required degree of severity at a time when she met the special earnings requirements of the Act." [Tr. 24]. The Hearing Examiner found, and it is not disputed, that the plaintiff met the earnings requirement prior to and including December 31st, 1963, and that the evidence must thus establish that the claimant was under a disability beginning on or before December 31st, 1963. [Tr. 19].

The Hearing Examiner also found that the plaintiff, born on March 20, 1913, had obtained no special training of any kind, and had completed only two years of high school. The plaintiff's work experience was primarily as a clerk although she had worked as a riveter during World War II and had also operated a doughnut machine. The plaintiff's last established employment was as a clerk for the Kresge Company, which position she resigned in 1956 pursuant to her physician's instructions. [Tr. 20].

The plaintiff also worked for a neighbor in 1966 but the work required some lifting and the plaintiff was unable to do all the work required which forced her to leave this employment. [Tr. 20].

■ The plaintiff has been recently diagnosed as suffering from a variety of severe ailments including: severe osteoarthritis, considerable amount of sclerosis of the abdominal aorta, extreme neurosis which was not controlled by any medication. [Tr. 22 and Exhibit 23]. However, these disabling illnesses were diagnosed at some time after the plaintiff's insured status and of course could not be considered as a basis for eligibility for insurance benefits. The Hearing Examiner made the following findings of the plaintiff's impairments during the insured status:

> "[S]he was suffering from an impairment which has been variously described as ptosis stomach and transverse colon, chronic cholecystitis, spastic gastric enteritis, pyloric ulcer and

hypertrophy of the gastric rugae." [Tr. 25].

But the Hearing Examiner concluded that the medical evidence failed to establish that the plaintiff's impairments were of such a degree of severity so as to preclude her from engaging in any substantial gainful activity on or before December 31, 1963. [Tr. 25].

One of the plaintiff's treating physicians, Dr. Svoboda, died in 1960 which no doubt placed the plaintiff in a more difficult position in regard to her burden of proof, and it is clear that the Hearing Examiner's decision was based on the plaintiff's failure to present sufficient credible evidence.

Although the government argues that the medical evidence was conflicting the Court does not perceive any conflict; rather it is clear that the Hearing Examiner's decision was based on the plaintiff's failure to present sufficient credible evidence, and not upon a resolution of conflicting opinions or reports.

However, the Hearing Examiner did not consider a significant medical report, because it was not available when he made his findings of fact. The Court is not criticizing the Hearing Examiner, as it is the plaintiff's burden to produce the necessary evidence. The Secretary properly received this later offered evidence and had such evidence when the Appeals Council accepted the decision of the Hearing Examiner as correct.

The medical report in question was prepared by Dr. Edward Smith, a treating physician of the plaintiff during part of the insured period in question. Dr. Smith reports that he first examined the plaintiff in May, 1962, that the plaintiff suffered from severe back pain in December, 1962, that a series of x-rays revealed a pyloric ulcer, hypertrophy of gastric rugae and marked ptosis transverse colon and that the plaintiff was unable to work at any time during the period of May, 1962, to December, 1965. Dr. Smith first examined the plaintiff in May 1962, and last examined the plaintiff in December, 1965, with an occasional frequency of visits during that period. [Tr. 130–132].

As previously stated, the Appeals Council on review of the Hearing Examiner's decision did receive Dr. Smith's report [along with a letter from the plaintiff's employer stating that the plaintiff resigned from position as a sales clerk in 1957 due to ill health [Tr. 129].

Without comment, however, the Appeals Council "concluded that the decision of the Hearing Examiner is correct."

The Hearing Examiner explicitly stated:

"Thus it must be found that the claimant had an impairment variously described as pyloric ulcer and hypertrophy of the gastric rulgae [sic], spastic gastric enteritis, ptosis of the stomach and transverse colon and chronic cholecystitis at a time during which she met the earnings requirements of the Act. *None of these conditions have been shown by the medical evidence to be of a substantial degree of severity.*" [Emphasis supplied Tr. 24].

But the Hearing Examiner did not have the benefit of the medical opinion by one of the plaintiff's treating physicians as to the severity of the illness.[1]

---

1. Without this additional report it would have been necessary to demand this matter for further clarification and consideration because the findings of the Hearing Examiner infer that the plaintiff was suffering from only one illness, which was described in different ways. It is clear from the record, however, that the plaintiff was suffering from a number of ailments, and there is no substantial evidence to support a finding that the plaintiff suffered from only one ailment. Counsel for the plaintiff argues that the cumulative magnitude of the conditions should be considered. Perhaps the Hearing Examiner did consider the matter on this basis, but this is not clearly shown by the record. Instead it appears that each ailment was considered in isolation, and possibly each separate ailment by it-

The Appeals Council gave no reason for rejecting Dr. Smith's medical report. The government argues that Dr. Smith did not support his opinion with clinical and laboratory findings. This is not correct. Dr. Smith approved the 1962 hospital report which is a part of the record, and was referred to by the Hearing Examiner. [Exhibit # 19, Tr. 120]. Apparently the government was unaware that Dr. Smith approved that report because that report, among others is cited, but with the caveat that:

"There is no indication in these reports that plaintiff's attending physicians considered her stomach and intestinal complaints so disabling that she could no longer work." [Defendant's memorandum brief, page 8].

Dr. Smith was the plaintiff's attending physician. His later supplementary report supplied the critical element that the Hearing Examiner found to be lacking. It appears abundantly clear to this Court that the plaintiff's impairments were of a marked degree of severity. Dr. Smith's report should be accorded proper weight because it is an elaboration of an attending physician on objective clinical testing which is a part of the record.

■ This Court is of the opinion that the Appeals Council was thus arbitrary in brushing that report aside with only the comment that the report had been received.

As stated in Heslep v. Celebrezze, 356 F.2d 891, 894, [4th Cir. 1966]:

"While the attending physician's opinion . . . may not be binding on

the Secretary, we think it is entitled to substantial weight."

This is especially true in this case because there are no conflicting opinions to the contrary, and no reason or rational ground is advanced which would justify the rejection of such an opinion. *See also* Griffin v. Finch, 303 F.Supp. 162 [D.S.Carolina 1969].

Dr. Smith apparently did not personally testify during the proceedings, but his opinion is not mere uncorroborated hearsay. The record is replete with other hospital records, all of which show that this unfortunate individual has been the victim of a series of serious ailments. Her work record since 1956 shows that she could not function at an undemanding job even with her sister's assistance. No doubt there are many cases where the evidence is stronger, but when the entire record is consistent, each element of evidence supporting the other elements of evidence, then the total picture becomes clear.

■ The *entire* record in this case clearly shows there is no substantial evidence that would support the Secretary's decision. On the contrary the entire record provides substantial evidence that the plaintiff was not able to engage in any substantial gainful activity during the insured period. There being no evidence to the contrary only one conclusion is proper. In this case there is not even any medical testimony which speculates that the past condition was not disabling within the meaning of the Social Security Act. *See* McCalip v. Richardson, *supra.*

---

self would not have been disabling. But each ailment when added to the others presents an entirely different perspective. The plaintiff was suffering from a pyloric ulcer; acute pyelitis, [inflammation of the pelvis of the kidney]; spastic gastroenteritis [an inflammation of the stomach and the intestine]; chronic cholecystitis, [inflammation of the gallbladder]; hypertrophy of the gastric rugae [marked enlargement of the folds

of the mucous membrane of the stomach]; and ptosis of the stomach and transverse colon ["ptosis" means the slipping or sagging of an organ]. *See generally* Dorland's Illustrated Medical Dictionary, 24th Edition.

But for some reasons to be stated the evidence not considered by the Hearing Examiner conclusively establishes the severity of the ailments and obviates the need for further clarification.