**Harold E. BLEDSOE, Plaintiff-Appellant,**

**v.**

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant-Appellee.**

No. 72–1052.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1972.

Decided Nov. 14, 1972.

Morris B. Blumberg, Terre Haute, Ind., for plaintiff-appellant.

Stanley B. Miller, U. S. Atty., Indianapolis, Ind., for defendant-appellee.

Before STEVENS and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.*

STEVENS, Circuit Judge.

Claimant-appellant petitioned the district court to review a denial of social security disability benefits. The district court entered summary judgment against claimant upon finding that there was substantial evidence to support the Secretary's determination that appellant was not under a "disability" as defined

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

in Title II of the Social Security Act.[1] We affirm.

Claimant's theory is that the aggregate effect of his several physical impairments renders him disabled and entitles him to disability benefits. The Hearing Examiner rejected this contention, expressly finding that the appellant's disorders "alone or in combination thereof are not so severe that they result in any marked or significant interference with the claimant's work capacity in the type of employment he has previously engaged as a bartender." Hearing Examiner's Decision at 7, App. 18. The question presented by this appeal is whether the administrative findings are supported by substantial evidence.

We share the opinion evidenced by the Fourth Circuit's holding in Dillon v. Celebrezze, 345 F.2d 753 (1965), that such findings should be carefully scrutinized when it is manifest that the claimant's work capacity is impaired by his physical condition. Nevertheless, it is not our function to substitute our judgment for that of the administrative agency which processed the claim. In this case we are satisfied that the record contains substantial evidence supporting the Secretary's findings.

Appellant is a World War II veteran. Since 1944 he has carried a piece of shrapnel in his right shoulder; it causes him some pain and entitles him to a 30% disability pension as a veteran. Upon discharge from the Navy in 1945 he opened a grocery store, but the venture failed after three years. He then worked in several capacities, including as a machine lathe operator and as a parts inspector on an assembly line. He was laid off in the spring of 1956. He had no steady employment until he was hired by the Indiana Highway Department in 1961; during that period he performed only odd jobs such as planting and fruit picking. After two years with the highway department he went to work for his aunt as a bartender and continued in that capacity until she sold the tavern in June of 1969. Except for a brief period of picking fruit for his brother, he has been unemployed since then.

On April 15, 1970, claimant filed an application for disability insurance benefits with the Department of Health, Education and Welfare. He was promptly examined by his own physician, Dr. Rompf, and given a "disability interview" by a representative of the Secretary. His doctor's diagnoses were: "1. Generalized osteoarthritis; 2. Hiatal hernia; 3. Foreign body in right shoulder; 4. Old wrist fracture (right)." Ex. 11, App. 76, 78. These medical findings have been accepted at all subsequent stages of the proceeding.

---

1. 42 U.S.C. § 416(i)(1) provides, in part, that:
   " . . . the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. * * * The provisions of paragraphs (2)(A), (3), (4), and (5) of section 423(d) of this title shall be applied for purposes of determining whether an individual is under a disability within the meaning of the first sentence of this paragraph in the same manner as they are applied for purposes of paragraph (1) of such section."
   Section 423(d)(2)(A) provides, in part, that an individual:

" . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."
Subparagraph (3) defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

In his application and in his interview claimant also complained that his legs buckled and cramped upon walking and that he suffered from stomach pains. The interviewer noted no observable physical difficulties,[2]. and commented that appellant was: "Very evasive. Very difficult to obtain any answers." Ex. 10, App. 72, 75. In May of 1970 X-ray examinations were made to determine the basis for appellant's claim that his legs buckled.[3] In a report dated May 20, 1970, the results of the X-ray examination were summarized as follows:

"The claimant complains of arthritis in right shoulder, arm and back. He also says legs buckle and cramp upon walking.

"X-rays taken 5/11/70 of lumbo-sacral spine show a mild curve of the lumbar spine. There is no evidence of fracture, tumor or bone defect. The vertebrae and disc spaces all appear normal. At the same time X-rays were taken of the pelvis and hips which were normal except for minimal degenerative joint disease in the hips.

"Considering the absence of any X-ray or laboratory evidence to support an impairment severe enough to preclued the W/E [wage earner] from engaging in his usual employment, it is determined the W/E is not under a disability." Ex. 14, App. 83, 84.

On June 16, 1970, appellant was advised that although he met the earnings requirement for disability purposes, his medical condition was not disabling within the meaning of the law. Ex. 2, App. 62.

On June 24, 1970, appellant filed a request for reconsideration, stating that he was unable to work because of "diseased hip joints, arthritis of spine, her-

nia, and calcium deposits in aorta." Ex. 3, App. 64. He further stated that his doctor agreed that he was unable to work and that it was necessary for him to take nerve and pain pills daily, shots every three weeks, and that his legs were weak and buckled. Following that request, on August 13, 1970, appellant was reexamined by Dr. Wheeler, a physician selected by the Secretary. Dr. Wheeler's report is thorough and detailed and confirms the presence of various physical impairments. In the concluding paragraph of his report Dr. Wheeler stated, in part:

"Prognosis for return to work is fair. His pain of his joints and muscles and attacks of weakness of his legs would interfere with him performing manual labor. It is felt that he could safely return to his previous occupation. His malfunction appears to be slightly progressive. Patient could take training for a full time sedentary position requiring standing and limited walking. No apparent etiology for the attacks of weakness of his legs." Ex. 16, App. 86, 88.

Dr. Wheeler's final conclusion, stated in summary form on September 18, 1970, referred not only to specific impairments, but also to appellant's "combination of impairments." He stated:

"A review of the recent consultative examination does not demonstrate any body system impairments nor combination of impairments whose severity level would prevent this claimant from engaging in his previous work as a bartender. The medical evidence is considered adequate for functional assessment and no further development will be necessary." Ex. 18, App. 92.

---

2. Disability interview procedure provides that any difficulty observed in any of the following categories should be noted: Sight, reading, responding, hearing, use of hands and arms, writing, speaking, comprehending, breathing, sitting, walking, other. The interviewer observed no difficulty in any of those categories. See Ex. 10, App. 72, 75.

3. Appellant had also explained that he had fallen twice while mowing the lawn and on another occasion while he was suffering from the flu. Tr. 9, App. 33 (all transcript citations are to the transcript of the proceedings held before the Hearing Examiner on January 10, 1971).

On October 14, 1970, appellant received a notice of reconsideration determination, advising him that the medical evidence, including the reports from his attending physician, as well as from Dr. Wheeler, had been reviewed and that it had again been determined that his physical condition would not prevent him from working as a bartender or from doing certain kinds of light physical or sedentary work. Ex. 4, App. 65–66.

Thereafter appellant filed a timely request for a formal hearing, which was held on January 20, 1971. He testified in person at that hearing and supported his claim with additional evidence not previously considered. That evidence included: (a) a letter from Dr. Rompf (Ex. 22, App. 100) referring to his treatment of appellant for "back pain, buckling of both legs, trouble with food digestion, sinus trouble, and a lot of colds," and expressing the opinion "that this man is unable to make a living"; (b) a short note from Dr. M. E. Tomak (Ex. 24, App. 102) certifying that appellant had been under his care in June of 1965 in connection with hypertrophic changes in the cervical spine, but not indicating any opinion about his condition subsequent to June of 1969; and (c) a note from Dr. Joseph E. Dukes (Ex. 25, App. 103) stating that he had treated appellant periodically for several years, that he had "frequent colds, peptic ulcer disease," and had previously had "acute paroxymal [sic] tachycardia."

At the hearing appellant was the only witness who testified. The Hearing Examiner prepared a detailed written opinion in which he summarized appellant's testimony, the medical evidence in the file, and particularly the three physicians' statements submitted subsequent to Dr. Wheeler's examination. He commented specifically on each of the disorders disclosed by the record. It is apparent from his opinion that although he reviewed and considered the brief reports of Drs. Rompf, Tomak and Dukes, he gave greater weight to the detailed findings by Dr. Wheeler. It is also apparent that he relied in part on his own impressions derived from appellant's testimony at the hearing.

Based on the following specific findings he decided that appellant was not entitled to disability benefits under the statute:

"1. The claimant's impairments have been diagnosed as generalized osteoarthritis, peptic ulcer disease, hiatal hernia, and varicose veins;

2. The claimant has a mild osteoarthritis disorder and a mild peptic ulcer causing no significant physical limitation and no discernible anatomical changes at the present time;

3. The claimant's hiatal hernia and varicose veins have not been diagnosed at the present time as a serious impairment;

4. The claimant retains the physical capacity to perform substantial gainful activity of a light physical nature on a regular basis;

5. Jobs for which the claimant is qualified exist and are readily available to him in the area in which he resides;

6. The evidence fails to establish that the claimant is precluded from engaging in gainful activity by impairment or impairments which can be expected to result in death or which have lasted or can be expected to last for a continuous period of not less than 12 months;

7. The claimant was not under a 'disability' as defined in the Social Security Act, as amended." Hearing Examiner's Decision at 8, App. 19.

Appellant made a timely request for a review of the Hearing Examiner's decision. On February 23, 1971, the Appeals Council notified appellant of its conclusion that the Hearing Examiner's decision was correct. Appellant then

filed his complaint in the District Court for the Southern District of Indiana. The district judge reviewed the file and entered summary judgment for the Secretary.

Even though the record contains medical opinion supporting appellant's position, reliance on the contrary conclusions expressed by Dr. Wheeler was not error. Halsey v. Richardson, 441 F.2d 1230, 1236 (6th Cir. 1971). The fact that the combined effect of appellant's various impairments was expressly evaluated both by Dr. Wheeler and by the Hearing Examiner serves to distinguish Dillon v. Celebrezze, 345 F.2d 753, 757 (4th Cir. 1965), on which appellant heavily relies.

We conclude that the record contains substantial evidence supporting the Hearing Examiner's decision and that the judgment of the district court must therefore be

Affirmed.

SPRECHER, Circuit Judge (dissenting).

I respectfully dissent.

Section 223(a)(1) of the Social Security Act, 42 U.S.C. § 423(a)(1), provides for disability insurance for every person who (1) is insured for disability insurance benefits, (2) has not attained the age of 65, (3) has filed application for disability insurance benefits, and (4) is under a disability.

The appellant here, Harold E. Bledsoe, fulfilled the first three requirements and had the burden of proving that he was under a disability, defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

There are four elements of proof to be considered in determining whether a claimant is disabled: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education and work history. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

The objective medical facts showed that Bledsoe was suffering from generalized osteoarthritis, including calcification of the abdominal aorta, iliac arteries, aortic arch and thoracic spine; hiatal hernia; gastritis; bilateral varicose veins; active duodenal ulcer deformity; grating of the right knee on passive extension and flexion; one plus edema of the left ankle; right wrist fracture in 1944; service-sustained shrapnel in right shoulder; fracture of the patella in 1950; achilles and olecranon spurs; and a 16-pound weight loss in one-and-one-half years in a 5'8", 144 pound male.

Three doctors had treated Bledsoe for low back pain; buckling of both legs; trouble with food digestion; sinus trouble; generalized arthritis; severe hypertrophic changes in the cervical spine with several areas of encroachment on the neural canal and abnormal straightening of the cervical curve; peptic ulcer disease; frequent colds; and acute paroxysmal tachycardia.

Bledsoe complained of arthritic pain in his right knee, left and right wrists, right elbow and neck; that his legs buckle and cramp on walking; that his stomach pains him continuously; that he suffers from indigestion and constipation. He is on medication consisting of nerve pills three times a day, Darvon pain pills once or twice a day, and a sleeping pill at night. His doctor prescribed pills for his stomach but he gave up taking them because they afforded him no relief.

One of Bledsoe's treating doctors concluded that "[m]y opinion is that this man is unable to make a living."

The government referred Bledsoe to Dr. Byron C. Wheeler for a vocational

disability determination examination. Dr. Wheeler concluded:

"Prognosis for return to work is fair. His pain of his joints and muscles and attacks of weakness of his legs would interfere with him performing manual labor. It is felt that he could safely return to his previous occupation. His mal function appears to be slightly progressive. . . . It is felt that his mal function will persist for more than 12 months."

Bledsoe at the time of his administrative hearing was 56 years old; his education ended with 3½ years of high school; his employment consisted of manual labor in the Civilian Conservation Corps, in a milk plant and in a foundry; assembly line work; operation of a grocery store; lathe operator; inspector at an automobile plant; highway manual labor; and fruit picking. His last employment (aside from a short period of orchard work) was tending a bar owned by his aunt, for six years from 1963 to 1969.

It has been held repeatedly that the Social Security Act should be liberally construed in favor of disability and the intent is inclusion rather than exclusion. Polly v. Gardner, 364 F.2d 969, 974 (6th Cir. 1966); Rowe v. Finch, 427 F.2d 417, 419 (4th Cir. 1970); DePaepe v. Richardson, 464 F.2d 92, 101 (5th Cir. 1972).

Although our review is limited to a determination of whether the Secretary's findings are supported by substantial evidence (42 U.S.C. § 405(g)), I conclude that in this case they were not.

Bledsoe's last substantial employment was for his aunt as a bartender in her tavern for six years. When the tavern was sold, the new owners terminated his employment. He testified that during that job "[m]y wife was helping and we was only running in the daytime. . . . She has worked lots of days when I wasn't able to work."

Substantial evidence does not support the hearing examiner's finding that "[t]he claimant retains the physical capacity to perform substantial gainful activity of a light physical nature on a regular basis." Presumably it is based on Dr. Wheeler's conclusion that "[i]t is felt that he could safely return to his previous occupation." But Dr. Wheeler had also concluded that Bledsoe's ailments "would interfere with him performing manual labor." Bartending requires manual labor to carry cases of bottles and other such tasks which the ordinary, non-relative employer would require. Bledsoe testified that on frequent occasions his legs would buckle and he would fall to the ground. The normal employer would not countenance this nor would he permit the employee's wife to take his place during absences necessitated by physical impairments.

It would be difficult to find a person with a greater number of objective ailments than Bledsoe. Nevertheless Dr. Wheeler found him "alert, cooperative, and oriented" and the hearing examiner found him to be likewise, which appeared to influence both of their judgments as to his disability. Bledsoe's forthright demeanor merely demonstrated in another way that he was not a malingerer feigning incapacity. It had no bearing on his objectively and subjectively proved ailments which combined to disable him. *See* Dillon v. Celebrezze, 345 F.2d 753 (4th Cir. 1965); DePaepe v. Richardson, 464 F.2d 92 (5th Cir. 1972); Swihel v. Richardson, 346 F. Supp. 930 (D.Neb.1972).

I would reverse.