Perry GOOD, Plaintiff,

v.

Caspar WEINBERGER, Secretary of
Health, Education and Welfare,
Defendant.

Civ. A. No. 72–1035.

United States District Court,
W. D. Pennsylvania.

Jan. 23, 1975.

------

Thomas A. Swope, Jr., Swope & Swope, Ebensburg, Pa., for plaintiff.

James A. Villanova, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## MEMORANDUM

JOHN L. MILLER, District Judge.

This is a continuation of an action filed in 1972 pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) wherein Perry Good seeks judicial review of the decision of the Administrative Law Judge (ALJ) of the Bureau of Hearings and Appeals, Social Security Administration. Earlier we had denied defendant Secretary's motion for summary judgment by ordering the case remanded for further hearing pursuant to this Court's opinion of July 31, 1973. The matter having been reheard and further developed with the resultant denial of disability benefits, this case is now before the Court again on the Secretary's motion to reopen. The Secretary accordingly filed a supplemental trial record. Oral argument having been waived, counsel filed supplemental briefs wherein the Secretary respectively renewed his motion for summary judgment. Thus it is with the aid of additional evidence and new developments that this Court reviews the entire record.

## FACTS

Perry Good is a male, forty-six years of age, with a wife and four children. He possesses a fifth grade education with primary work history in wood cutting and general sawmill work. He was a cook's helper while temporarily serving in the military forces. He also worked for about three years in the coal mines.

Plaintiff claims disability by virtue of a back injury sustained in 1963, while working for a lumber company when a falling tree struck him. The medical evidence up until the time of the first hearing indicates that he suffered a compression fracture of the twelfth dorsal vertebrae which, after nine months in a body cast, necessitated a spinal fusion of the eleventh dorsal, twelfth dorsal, and first lumbar vertebrae. The surgery was performed in February 1965.[1]

Additional prior medical evidence showed that plaintiff's spine is limited in flexion and somewhat in extension with X-rays showing minimal lipping of some of the segments of the lumbar spine. His back condition was diagnosed as old compression fracture of the twelfth dorsal vertebra due to wedging and early arthritic changes as well as sore back due to post-traumatic surgery. Plaintiff, who has not worked since August 1969, has a documented history of complaints of chronic or severe low back pain.

Because of remand, a further hearing in this matter discloses the following additional evidence. Claimant was re-examined after the second hearing by Dr. Lawrence Casale upon the recommendation of the medical advisor who testified at that hearing, Dr. William Davison. The medical advisor also suggested that stress X-rays be taken which required laminograms being done in the flexion and extension positions for proper evaluation of plaintiff's condition. The

---

1. Here a discrepancy appears on the record. At the last hearing Mr. Good testified that the operation was in 1964 (Tr. 207) while his testimony at the prior hearing disclosed 1965 (Tr. 35–36). However a hospital report (Ex. 22, Tr. 92) reveals that surgery was performed sometime in late February or early March 1965.

consultative physical examination revealed normal range of motion in the cervical spine, full range of motion in shoulders with good muscle tone, active reflexes; flexion of lumbar spine was approximately 60 degrees, hyperextension was 10 degrees. Straight leg raising was 90 degrees bilaterally with some low back pain. The reflexes were active and muscle atrophy was not clinically observable. The stress X-ray report revealed a solid fusion. Diagnoses listed were a compression fracture of D–12, spinal fusion dorsal lumbar region, and persistent back pain secondary to the fracture.

The medical advisor's testimony was that, from a medical standpoint, the claimant was capable of performing activities of a light and sedentary nature, but heavy lifting and related uses of the spine should be avoided. The medical advisor also responded to post-hearing interrogatories after review of the stress X-rays whereupon he stated the following:

(1) the fusion was solid;

(2) no medical evidence of either pseudoarthrosis or neurological involvement;

(3) back pain on flexion and straight leg raising could be caused by tight ham string musculature;

(4) opinion unchanged with regard to claimant's ability to engage in light or sedentary work.

The principal issue is whether the Secretary's decision to deny plaintiff disability insurance or a period of disability is supported by substantial evidence

So as to properly delineate the asserted errors represented by this appeal, it seems necessary for the Court to briefly summarize its prior action in this case. The Court had previously remanded for further hearing in conformity with its opinion of July 31, 1973, for the following reasons:

(1) The ALJ neglected to evaluate the non-medical evidence adduced at the first hearing and virtually disregarded the subjective complaints of the claimant contrary to the law of this Circuit. Bittel v. Richardson, 441 F.2d 1193 (3 Cir. 1971);

(2) The vocational expert's testimony was not adequately discussed to substantiate certain findings and conclusions made by the ALJ with respect to claimant's ability to engage in sedentary work.

With this background in mind, we now turn to the arguments presently advanced by the respective parties.

Plaintiff's argument is essentially one of fact. In contending that the decision below is not supported by substantial evidence, plaintiff relies heavily on newly-acquired evidence fostered by the remand. Plaintiff cites to the Court testimony elicited from the medical advisor (Dr. Davison) which shows that he suffered a medically-determinable physical impairment. Plaintiff further submits that the medical examiner admitted that a fractured vertebra is painful and that if the fusion is not sound the pain is not alleviated. Claimant also lays emphasis on the consultative report of the examining physician (Dr. Casale) which in claimant's view, objectively supports his subjective complaints of pain. In pertinent part the report states:

> It is now felt in injuries of this type, certain patients are troubled by persistant [sic] low back pain which is not relieved by any of the usual forms of treatment including spinal fusion. These patients continue to have pain and their ability to function is an individual factor which is governed by the patient's own motivation. The disability is felt to be permanent in nature and no other recommendations for treatment are offered. (Ex. No. 39, Tr. 249).

Plaintiff contends the ALJ erred by not relying on this medical opinion. Lastly, plaintiff contends that the ALJ ignored the mandate of this Court on remand by reaffirming his commitment to the social security regulations and not to the rulings of the Third Circuit which are in certain respects at variance with the

regulations. In this regard, plaintiff quotes from the opinion below as follows:

> We are not unmindful of the fact that certain District Courts, particularly in the 3rd Circuit, have enunciated the rule, that contrary to the regulations by which this writer is bound, pain alone is sufficient upon which to base an award of benefits even though there is no supporting clinical data to objectively support such pain. We are, of course, bound by these regulations which require clinical manifestations to support our conclusions. . . . . (Tr. 165)

Because of such language plaintiff argues the proceedings on remand were conducted in a manner inconsistent with this Court's prior opinion.

The Secretary on the other hand maintains that, notwithstanding the new evidence secured, his decision is still substantially supported. He points to Dr. Davison's testimony which, apart from Dr. Casale's report, established that there was no medical evidence to explain plaintiff's subjective complaints of pain. Moreover, his testimony indicated that there was nothing on the medical record that could serve to preclude claimant from engaging in light or sedentary work. More to the point of this case, however, defendant argues that *Bittel*, supra, is no impediment to the decision below because plaintiff failed to prove to the factfinder by subjective symptomology that his pain is disabling. So as not to run afoul of this Court's prior order, defendant makes note of the fact that the ALJ did give full consideration to plaintiff's allegations of pain on remand (Tr. 165). Thus defendant contends that it did not disregard plaintiff's evidence of pain or any other evidence for that matter.

■ Inasmuch as this Court is cognizant of the provision of the Social Security Act (Act) mandating that our scope of review—even after remand and additional findings—be limited to overseeing conformity with the law, 42 U.S.C. § 405(g), we are here, by that very mandate, faced with a threshold question, to wit: were the defects noted from the first hearing cured on remand? A careful reading of the administrative decision discloses the following: The ALJ in accordance with our order sufficiently evaluates plaintiff's subjective allegations of pain. While it is true that the ALJ reaffirmed his allegiance to the regulations which call for clinical manifestations to support a conclusion of disability he goes on to say ". . . but even were that not so, it would not particularly help the claimant here." (Tr. 165). He then proceeds to fully consider and discuss the issue of subjective pain which by our prior opinion and *Bittel* is all that he is required to do. As Judge Adams in that case stated,

> "[s]ymptoms which are real to the claimant, although unaccompanied by objective medical data, *may* support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof." *Bittel* supra, at p. 1195 (citations omitted, emphasis added).

We read this passage to grant the ALJ authority to pass judgment favorably on those applicants whom he *believes* to be possessed of pain or other subjective symptoms so intense as to be of disabling character, despite the total absence of clinical support. In other words *Bittel* seeks to help those claimants with cases that so often fall within the spirit—but not the letter—of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question. Moreover, after scrutinizing the supplemental testimony of the vocational expert we find that the ALJ's findings and conclusions are this time accurately represented and substantiated. Therefore, we turn to the essential issue before us.

■ Our sole function at this juncture is to determine whether upon the whole record the Secretary's decision is supported by substantial evidence. Boyd v. Folsom, 257 F.2d 778 (3 Cir. 1958); Urgolites v. Finch, 316 F.Supp. 1168

(W.D.Pa.1970); Krazalkovich v. Finch, 310 F.Supp. 1027 (W.D.Pa.1970). Substantial evidence has been defined as relevant evidence which a reasonable mind accepts as adequately supporting certain conclusions. Plouse v. Richardson, 334 F.Supp. 1086 (W.D.Pa.1971). And of course the Secretary's decision must be affirmed if substantial evidence exists to support the denial of disability benefits. Gentile v. Finch, 423 F.2d 244 (3 Cir. 1970).

To properly undertake the obligation with which we are charged a complete review of the entire record has been made. We have found that remand brings a salient modification to the proof aspect of this case because plaintiff now has objective medical evidence (Dr. Casale's report) [2] which corroborates his self-serving protestations of pain. Of course this development does not becloud the primary issue on review for, as unjust as it may sound, the Secretary does occupy the favored position.

In order to sharply define the question most importantly raised by plaintiff, the Court must first dismiss two contentions totally lacking in merit. Relying on the testimony of the medical advisor, plaintiff first argues that he suffered a medically-determinable physical impairment. We fail to see why that is even asserted because no one is questioning the plaintiff's impairment. In fact the evidence is overwhelming that he suffered a serious back injury and obviously cannot return to his former line of work. Secondly, plaintiff charges in his brief that the medical examiner admitted a fractured vertebra is painful and that, in the absence of a solid fusion, the pain is not relieved. Even conceding that there is testimony on the record establishing that plaintiff did engage in arduous work after the spinal fusion and that it is possible for the fusion to become porous because of such work, it is unequivocally shown by the stress X-rays and accompa-

nying report of Dr. Davison that the spinal fusion is indeed sound. Thus, we find this argument to be wholly specious.

■ We do think, however, as does the plaintiff, that the real question on review here is whether the favorable reports of the consultative physicians taken together with Mr. Good's subjective complaints sufficiently reduces to insubstantial that evidence of record relied on by the ALJ in concluding plaintiff is not disabled under the Act. However, before discussing what we believe to be the applicable law a look at the pertinent provisions of the Act is in order:

The term "disability" is defined in section 223 of the Act to mean:

"(d)(1) * * *

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *

"(B) * * *

"(2) For purposes of paragraph (1) (A)—

"(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work *but cannot*, considering his age, education, and work experience, *engage in any other kind of substantial gainful work which exists* in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . ." (emphasis added).

With regard to any other kind of substantial gainful employment the Secretary's burden of proving such work ex-

---

**2.** Plaintiff also received a favorable medical report from the Cambria County Board of Assistance (Dr. A. Martin) which, although not mentioned in counsel's brief, we have taken into account. (Ex. 238, Tr. 242–47).

ists for the purposes of the Act has been satisfied.[3] Plaintiff has raised no objections to that portion of the hearing involving the vocational expert nor do we perceive any defects relevant thereto. Therefore the question remains whether plaintiff is capable of performing those light or sedentary jobs which encompass any other kind of substantial gainful employment.

 Plaintiff contends his pain is so intense that he cannot engage in any of the jobs the Secretary found that he was capable of performing. The Act places the burden of proving disability on the claimant. The Act also places great trust and confidence on those that are charged with its proper administration. Thus the ALJ had the task of reconciling Dr. Davison's opinion that plaintiff was capable of engaging in light or sedentary work with those medical opinions declaring that plaintiff was disabled (Dr. Casale) or unable to work (Dr. Martin). There can be no doubt that the Secretary (ergo the ALJ) is charged with the function of determining whether or not an individual is under a disability. Social Security Regulations, 20 C.F.R. § 404.1526. Because only the ALJ can make factual determinations the case law in this regard has firmly established that a medical opinion does not conclusively determine disability as a fact. E. g., Bledsoe v. Richardson, 469 F.2d 1288 (7 Cir. 1972); Martin v. Finch, 415 F.2d 793 (5 Cir. 1969); Dillon v. Celebrezze, 345 F.2d 753 (4 Cir. 1965); Moon v. Richardson, 345 F.Supp. 1182 (W.D.Va.1972). Of course, if those medical opinions rendered in a particular case point in the same direction the ALJ will not usually encounter difficulty in making that determination. But, as in the instant case, when there are conflicting medical opinions presented it is noted that, while his obligations may prove onerous, his task is not in any manner lessened as the

Supreme Court has recently reiterated: "We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact [ALJ] has the duty to resolve that conflict." Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971).

At least three circuits hold that it is not error for an ALJ to rely on medical opinions contrary to those supportive of claimant's case. Bledsoe v. Richardson, 469 F.2d 1288 (7 Cir. 1972); Halsey v. Richardson, 441 F.2d 1230 (6 Cir. 1971); Green v. Gardner, 391 F.2d 606 (5 Cir. 1968) (by implication). This is so even if the opinion so relied on is rendered by a doctor selected by the Secretary. *Bledsoe*, supra. And one case found in our own district holds that the ALJ is not bound to accept the conclusion of plaintiff's physician without weighing it against other relevant evidence. *Urgolites*, supra, 316 F.Supp. at p. 1174. This same case also holds that the trier of fact is not bound by a determination of disability for Veteran's Administration purposes.[4]

 Before going any further it is interesting to note what the ALJ did consider in conjunction with the relevant medical evidence. In his Recommended Hearing Decision he stated:

Pain is claimant's principal subjective symptom according to his testimony, and it has long been recognized that there are disorders in which pain is constant, unremitting and wholly irresponsive to therapeutic measures. Generally, though when an individual has suffered pain for a long period of time, there are observable signs, such as drawn features, and in most cases, sharp weight loss and muscle atrophy due to disuse for the purpose of avoiding discomfort; as well as a medical history replete with efforts to alleviate pain. In this case, there are no such observable signs or circumstances.

---

3. See Bujnovsky v. Celebrezze, 343 F.2d 868 (3 Cir. 1965); Boback v. Finch, 304 F.Supp. 966 (W.D.Pa.1969).

4. Plaintiff receives a monthly VA pension (Tr. 34).

The claimant has no muscle atrophy, he has maintained good weight for his height and has the outward appearance of health. In brief then, while we have thoroughly considered claimant's subjective complaint of pain, we have also considered his motivational factors on the outcome of this proceeding and in making due allowances, therefore, in light of what we have just said, do not find claimant's pain of a disabling nature. (Tr. 165).

It is clear that an ALJ can rely on his own impressions derived from a claimant's testimony and demeanor. Rolenaitis v. Richardson, 336 F.Supp. 1235 (E.D. Pa.1972), aff'd, 475 F.2d 1396 (3 Cir. 1973); *Urgolites*, supra. And another important factor to be considered is credibility as Judge O'Sullivan so aptly observed in *Halsey*, supra, 441 F.2d at p. 1236:

> But a claimant's assertion that he is experiencing disabling pain *does not foreclose attack on the credibility of such assertion.* A factfinder's conclusion, based upon more persuasive evidence, either that the asserted pain does not exist or *is of such moderate degree as not to foreclose gainful employment*, is not forbidden. However respectable and well intentioned the opinions of Doctor Lester Lasky, Halsey's doctor, *they are still subject to attack* when thrown in contest with other and contrary respectable opinions. The factfinder was also at liberty, especially upon the record before us, to conclude that Halsey's claim of pain and the disabling degree thereof, was not worthy of belief.

Therefore we believe it was not error for the ALJ to attack the reports of Drs. Martin and Casale so long as the bases for such attacks are well founded. It is important to note that while plaintiff complained of pain to Dr. Martin in his back, thighs, and ankles the ALJ found that ". . . not one of the medical reports in this case reveal any muscle atrophy in the lower extremities nor is there any decrease of reflexes and no lack of motor coordination is noted" (Tr. 165). As for Dr. Casale's favorable report we believe the ALJ is justified in reading it in whole and not ferreting out those isolated sentences purely supportive of plaintiff. Probably the most important sentence in his report reads: "These patients [compression fracture—spinal fusion treatment] continue to have pain and their ability to function is an individual factor which is governed by the patient's own motivation" (Ex. 39, Tr. 249). As we stated earlier the law permits weighing such evidence against motivational factors. Of course the ALJ does not really disregard Dr. Casale's report with respect to pain. He merely concludes from all the available evidence ". . . that although *claimant is by no means symptom free*, he is, nevertheless, physically capable of performing a number of entry type jobs which are substantial and gainful in nature" (Tr. 166) (emphasis added).

Directing our attention to certain limitations evidently put on plaintiff's credibility by the ALJ we find that he could not reconcile protestations of severe pain with admissions by the plaintiff that the pain could be relieved with the use of a back brace or by changing positions. Moreover our own view of the record on this credibility matter discloses the following observations:

(1) Plaintiff stated he needs pain pills all the time yet he did not know what type are prescribed (Tr. 38);

(2) Plaintiff earlier testified he had not hunted since before he got hurt (1963) (Tr. 54), however at the second hearing (November 27, 1973), he stated that he hunted last year (referring to 1972) (Tr. 212);

(3) He stated that he was in the military service for two years (Tr. 203) when in fact his tour of duty lasted but thirteen months (Tr. 32);

(4) The discrepancies concerning such relatively simple things as the dates of his injury and operation (Tr. 35, 207);

(5) We also find anomolous the fact that plaintiff's wife, who was present at the first hearing and at least drove him to the second, did not testify on his behalf for corroboration purposes.

Coupling these inconsistencies and contradictions with the fact that a Dr. Smith, plaintiff's present physician who prescribes the pain medication, has entered no report on the record leads us to believe the ALJ is justified—together with his noted impressions from personal observation—in finding plaintiff's claims of pain to be not disabling under the Act.

While we are mindful of the many cases which repeatedly hold that the Act is to be construed liberally for the intent is inclusion rather than exclusion,[5] there can be no doubt that the road to benefits is a rocky one. Our Social Security system is not flawless. No doubt there are cases where the grant of benefits rests solely on the caprice and whim of the hearing judge. But this problem is not going unattended as the Center for Administrative Justice is currently re-examining, among other things:

> [W]hether the traditional methods of the adversary system are applicable in all respects to the resolution of claims and disputes in the mass administrative justice areas. Are there other models that can provide fairness, expedition, economy, and understanding? Another, which is not new but *which has become acute,* is whether *hearing systems* can be structured to provide *independent and impartial hearing officers,* on the one hand, and yet *consistently enforce agency policy,* on the other. Carrow, *Administrative Justice Comes of Age,* 60 A.B.A.J. 1396, 1397 (1974).

With these inherent drawbacks taken into consideration, however, we are accordingly persuaded that the record before us bears substantial evidence to support the Secretary's decision.

An appropriate order shall be entered.

---

5. E. g., Robb v. Finch, 311 F.Supp. 122 (W.D.Pa.1970).