**John GRIFFIN, Plaintiff,**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.**

**No. 73 C 1610.**

United States District Court, N. D. Illinois, E. D.

Dec. 29, 1975.

Eugene F. McMahon, Chicago, Ill., for plaintiff.

James Thompson, Former U. S. Atty., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Secretary of Health, Education, and Welfare (Secretary) denying his claim for disability insurance benefits. For the reasons set out herein, we affirm the Secretary's findings.

Plaintiff filed an application for a period of disability and for disability insurance benefits on March 17, 1971 alleging that he became unable to work on January 15, 1969 due to bad eyesight, sinus trouble, and an enlarged liver. The application was denied by the Social Security Administration's Bureau of Disability Insurance. The Administrative Law Judge (ALJ) considered the case *de novo* and on January 31, 1973, found that plaintiff was not under a disability starting on or before December 31, 1968, when he lost his insured status for disability.

In his decision, the ALJ found that plaintiff was not entitled to disability benefits. This finding was based on nonmedical as well as medical evidence. Plaintiff testified at the hearing before the ALJ that he had worked as a fireman, deliveryman for a florist, fire chief at a hotel, doorman, and mailman at a college. Regarding his health background, plaintiff testified that he had a

nervous breakdown 20 years prior to the hearing, a second one in 1961, and a third in 1966. For the last breakdown, he was hospitalized and received shock treatments for a period of four to five months. Additionally, plaintiff testified that he has had liver problems since 1967 or 1968 and bad eyesight since 1968, that in 1970 he had surgery for polyps, in 1971 for cataracts, and that he receives regular medical attention. Finally, plaintiff urged that his impairments had worsened since their onset, but asserted that he thought he could have done a day's work in 1968. Plaintiff's sister also testified that he could have worked in 1968. A portion of the transcript relating to plaintiff's ability to work in 1968 reads as follows:

Q You understand what I'm trying to get at Mr. Griffin? I don't think that there's any question at all in my mind at this time that you are disabled at this time from doing substantial gainful work. What bothers me is whether or not you were in 1968. This is what I'm trying to get at, so I want you to be sure to remember to tell me everything.

A I'll give you the truth. I was still available to work in '68 but the job that I was offered was peanuts. They wanted me to work for a dollar an hour and I refused them. Like even when I was a fire chief at the Hilton I only made $300 a month and that was considered a big job. $300 a month. That was $75 a week. At the Marine Drive job I was only getting about $360 and I had to work from 5 at night until 2 in the morning and I had to work on Saturday and Sunday nights. The job I had at the mail place at the school I was getting $370 a month, so I never did make any money. Then the other jobs that I was offered a dollar, a dollar and a half an hour which you'd even turn down. Just because I retired and was up in age. But I really did, at one time, have a desire to open a little hamburger joint because I was fairly good cook in the fire department. I

cooked for 20 years when I was at the fire department, and I enjoyed it.

Q Do you think that you've been getting worse all the time?

A In my eyesight I have.

Q Your general physical condition. Do you think it's been getting worse?

A Yes. Well that's why I was in for a check-up. I had three deaths in the family. Two weeks. That's a month ago, and that affected me.

Q Do you think that you could do a day's work now if you had a job?

A Well I could answer a phone and things like that but I couldn't do anything real physical. I couldn't drive a car or truck and that's what I really wanted.

Q Back in 1968 do you think you could have done a day's work?

A Yes sir. That's when I had the breakdown. It might have led to a breakdown. That was another thing to consider too.

The medical evidence showed that plaintiff spent a week in the Jackson Park Hospital, Chicago, Illinois in January of 1967 for a condition that was diagnosed as spastic colon and anxiety state. Plaintiff underwent two operations at Jackson Park Hospital on November 30, 1970 and December 2, 1970; both designed to correct a rectal bleeding condition caused by internal and external hemorrhoids. Plaintiff subsequently had two operations, June 30, 1971 and September 16, 1971, to remove cataracts from his eyes. Responding to a medical questionnaire, Dr. Vincent A. Costanzo diagnosed plaintiff's current condition as adenocarcinoma of the rectum. He stated that the first evidence of the condition was found in the course of a routine examination in the hospital in November, 1970.

The ALJ acknowledged plaintiff's spastic colon, diabetes, liver, and nervous problems prior to December 31, 1968, but found that plaintiff continued to engage in substantial gainful activity during the period. The ALJ also recognized that the onset of plaintiff's eye and colon

conditions occurred after the beginning of 1970. The ALJ concluded, therefore, that, notwithstanding the multitude of serious problems that the plaintiff had experienced, they were not of such a severe nature on or before December 31, 1968 as to have prevented substantial gainful activity.

The Appeals Council concluded that the ALJ's decision was correct and plaintiff brought this action. Pursuant to stipulation of the parties, the Court remanded the case to the Secretary. Upon receipt of additional evidence, including reports of specialists' examinations, the Appeals Council, by decision dated November 1, 1974, found that plaintiff was not entitled to a period of disability or to disability insurance benefits. The decision of the Appeals Council is the Secretary's final decision on plaintiff's claim.

The Appeals Council received evidence concerning two periods of hospitalization for plaintiff at the Mercyville Sanitarium, four periods of hospitalization at the Jackson Park Hospital, a report from Dr. Costanzo, which related to plaintiff's four periods of hospitalization at the Jackson Park Hospital, a report of plaintiff's hospitalization at the St. Francis Hospital, November 19, 1972 to November 28, 1972, and an April 26, 1974 report from Dr. Laszlo Koos, who treated plaintiff while he was at St. Francis. The Appeals Council also received a report dated June 25, 1974 from Dr. Douglas L. Foster who stated that he had reviewed the plaintiff's hospitalization at the Mercyville Sanitarium and that it was his impression that the claimant was substantially disabled because of his emotional illness for a period of more then one year prior to December 31, 1968. The two final reports were submitted by Doctors Puntenny and Spiro, two Board certified ophthalmologists, who found plaintiff's vision to be good without the use of corrective lenses and very good with them.

In evaluating this new evidence, the Council concluded that, since plaintiff was not statutorily blind within the meaning of 42 U.S.C. § 416(i)(1)—central visual acuity of 20/200 or less in the better eye with the use of correcting lens—he was required to establish that his impairments, including any visual impairment, prevented him from engaging in any substantial gainful activity for a continuous period commencing on or before December 31, 1968, and lasting to at least January 1970, which was 14 months prior to March 17, 1971, the date of his application. In response to Dr. Foster's opinion, the Council acknowledged the possibility that plaintiff may have been unable to work for as long as 12 months in 1960 or in 1966, when he was hospitalized for psychiatric treatment. The Council held, however, that no disability had been shown to last from December 1968 to January 1970. The Council also found that Dr. Costanzo's report, which concluded that plaintiff had been unable to do any gainful work since 1967 because of episodes of marked anxiety neurosis which led him to a state of chronic alcoholism was not supported by his records since they made only one reference to plaintiff's nervousness. Finally, the Council concluded that none of the other problems sustained by plaintiff was disabling when plaintiff was last insured.

The Secretary has moved for summary judgment on the ground that his final decision denying plaintiff's application for disability insurance benefits is supported by substantial evidence. The plaintiff opposes on three principal grounds. He contends that: 1) the evidence shows that plaintiff has not worked after the first quarter of 1968, 2) the plaintiff has made a prima facie case by tendering uncontroverted medical evidence that this unemployment was due to his continuing alcoholism and mental disorder, 3) since plaintiff made a prima facie showing of disability within the meaning of the Act, the burden shifted to the Secretary to establish non-entitlement by substantial evidence, 4) in failing to adduce evidence of a medical or vocational nature the Secretary failed to sustain his burden; therefore, his decision was not supported by substantial evidence.

*The Law*

To qualify for a period of disability and disability insurance benefits under 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. Section 416(i)(2)(E) provides:

> Except as is otherwise provided in sub-paragraph (F) [making an exception when timely filing was prevented by mental or physical incapacity] no application for a disability determination which is filed more than 12 months after the month prescribed by subparagraph (D) [providing that period of disability ends one month before age 65 or 2 months following cessation of disability] as the month in which the period of disability ends . . .
> shall be accepted as an application for purposes of this paragraph.

In order for plaintiff to prevail before the Secretary, the evidence would have had to establish that he became "disabled" on or before December 31, 1968, when he lost his insured status for disability purposes, and remained so until January 1970, 14 months prior to March 17, 1971, when he filed his application.

As to what constitutes "disability," 423(d)(1) provides that the term means—

> (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;
> (2) For purposes of paragraph (1)(A)—
> (A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

> (3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> . * * * * * *

> (5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

A combination of the § 416(i)(2)(E) requirement that an application for disability determination be filed not later than 12 months after a period of disability ends (if before age 65, two months following the cessation of the disability) and the § 423(a)(1)(A) requirement that the applicant have insured status at the onset of the disability, places upon plaintiff the burden of showing that the onset of his disability occurred on or before December 31, 1968 and continued at least until January 1970.

*The Issues*

The plaintiff contends that the Secretary improperly assessed his condition as a number of "distinct and severable" illnesses, while ignoring the over-all evidence which indicated that plaintiff had undergone a condition of protracted alcoholism. This condition impaired him both physically and mentally, he contends, and the medical evidence to that effect established a disability within the

meaning of the statute. Plaintiff cites *Dillon v. Celebrezze,* 345 F.2d 753 (4th Cir. 1965) and *Griffis v. Weinberger,* 509 F.2d 837 (9th Cir. 1975) in support of his position.

In *Dillon v. Celebrezze,* 345 F.2d 753 (4th Cir. 1965), the Fourth Circuit reversed a district court decision which affirmed the Secretary's decision denying a period of disability and disability benefits to plaintiff. The evidence showed that plaintiff had a severe heart condition, chronic bronchitis, arthritis upon an old fracture of the lumbar spine, degenerative changes in the bridge between certain vertebrae, other vertebrae damage resulting from mine accidents which had occurred a number of years earlier, and back and lung conditions that would qualify as medically determinable physical or mental impairments. The foregoing impediments were supported by the medical testimony of five doctors who had examined the plaintiff. The Court concluded that the examiner fragmentized Dillon's several ailments and the medical opinions regarding each to such an extent that he failed to properly evaluate their effect in combination upon the claimant. In view of the evidence, which indicated that plaintiff's impairments severely restricted his activities and caused him to experience frequent and severe pain, the Court commented:

> We think it a wholly unrealistic application of the statutory standards to hold that an illiterate person of fifty-four whose only previous work experience involved the hard manual labor of coal mining and who was suffering under the cumulative psychological and physical handicap of these disabilities could be expected to obtain, much less to perform, any substantial gainful activity.

In the instant case, the evidence shows that plaintiff was beset by a number of physical impairments both before and after December 31, 1968, the last date of insured status. None of the illnesses occurring before December 31, 1968, including the three breakdowns, the liver ailment, and the eyesight problem, was shown or even suggested by plaintiff to have resulted in an inability to engage in substantial activity. On the contrary, plaintiff engaged in steady employment until the first quarter of 1968; and he testified that although unwilling to work for $1.00 or $1.50 an hour, he was still capable of work in 1968. The evidence of record, therefore, substantially supports the ALJ and Appeals Council's determinations that on or before December 31, 1968 plaintiff had sustained no disability within the meaning of the Act. Those illnesses that had their onset after December 31, 1968 may not be considered for disability purposes because of the insured status requirement of § 423.

*Griffis v. Weinberger,* 509 F.2d 837 (9th Cir. 1975) is persuasive authority for the proposition that severe alcoholism and related drug abuse can amount to a disability as defined in the Act. The record in that case was full of evidence that Griffis had long suffered from severe chronic alcoholism and related drug abuse. In addition, the hearing examiner made a finding to that effect. The examiner held, however, that addiction to alcohol absent the showing of a sufficiently severe underlying physical or mental impairment would not support a finding of disability.

The Ninth Circuit disagreed with the Secretary, holding that the proper standard to be applied is whether plaintiff's alcoholism was so serious as to cause him to be "disabled" within the meaning of the statute—unable to engage in substantial gainful activity. The Court accordingly remanded to the Secretary for a new hearing at which the proper standard would be applied.

In the instant case, plaintiff paints a picture of his medical history which attempts to incorporate his many and varied physical and emotional problems into a case of increasingly acute alcoholism. Substantial evidence exists in the record to support the Secretary's conclusion that plaintiff's drinking problem was

neither severe nor disabling on or before December 31, 1968.

The plaintiff made no attempt to attribute his alleged disability to alcoholism as revealed by the following excerpt from his testimony:

Q What was wrong with you before? Back in 1968. What were all your problems then besides the nerves?

A Well I did a little drinking.

Q You had a little problem with drinking?

A Yes sir.

Q You think you've got that pretty well taken care of now?

A Yes sir. I was afraid I was coming into another nervous breakdown when I was driving that truck for the florist company. I had to hit that Dan Ryan Expressway all day long and I had many a close call.

Pursuant to the burden of proof requirements under the Act, plaintiff would have to show that his alcohol and other problems were so severe as to have prevented him from engaging in substantial gainful activity on or before December 31, 1968. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). Plaintiff's testimony indicates that in 1968, the crucial year for a determination of disability in his case, his drinking problem was one among others including liver, eye, and nervous conditions, and instead of attempting to establish disability based on alcoholism, the record shows that plaintiff claimed a disability caused by bad eyesight, sinus trouble, and an enlarged liver.[1]

The nervous breakdowns, liver problem, and eye condition did not prevent plaintiff from engaging in substantial gainful activity through the first quarter of 1968. Plaintiff, who was 58 years old at the time of his testimony before the Bureau of Hearings and Appeals, testified that he retired in 1968 but was able to do a day's work during that year. This testimony was corroborated by his sister.

Plaintiff cites the opinions of two doctors on the question of whether he was disabled within the meaning of the Act. Dr. Vincent Costanzo, Mr. Griffin's family doctor, who first attended him in January, 1967, stated the following in a letter captioned "To Whom It May Concern":

Mr. Griffin has been unable to do any gainful work because of recurrent episodes of marked anxiety neurosis which led him to a state of chronic alcoholism prior to his admission to Mercyville in 1967 and since then.

He has had many episodes of delirium tremons prior to and since 1967. His chronic alcoholism has caused him to be anorexic, lose much weight and develop much generalized weakness; thereby unabling [sic] him to do any work.

On remand, the Appeals Council pointed out that Dr. Costanzo's opinion was not supported in the record by specific and complete clinical findings. Of all the records of Dr. Costanzo, no treatment for a significant emotional impairment was shown and only one notation associated with a mental disorder or alcoholism existed. The record for a December 17, 1966 visit reads, "Nervousness—hands shaking—stomach quivers—appetite poor—drinks ⅕ daily." Additionally, the Council points out that shortly after the December 17, 1966 visit, plaintiff was hospitalized for spastic ulcer and anxiety state with no reference to treat-

---

1. There is no question that the record substantially supports the Secretary's conclusion that plaintiff's eye condition prior to December 31, 1968 could not support a disability termination. This is evidenced by the following concession made by plaintiff in his opposition brief:

The plaintiff readily concedes that this eye condition is not the sole basis of his claim

for disability. It is an additional fact to consider only because it diminished certain avenues of substantial gainful employment. The plaintiff concedes that his eye condition as it existed prior to December 31, 1968, by itself, would not support a claim for disability.

ment for an emotional illness. Dr. Costanzo's testimony loses much weight in light of plaintiff's actual gainful employment throughout 1967 and a portion of 1968.

The determination of whether a person is functioning under a disability is the responsibility of the Secretary and, while the medical opinion of an examining physician must be given some weight, the extent of it depends on the degree to which it is supported by specific and complete clinical findings. 20 C.F.R. § 404.1526; *Hassler v. Weinberger,* 502 F.2d 172 (7th Cir. 1974); *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir. 1973). Based on the foregoing authority, the Secretary properly weighed and evaluated Dr. Costanzo's letter after considering his overall records and other evidence in the record.

After reviewing plaintiff's medical records at the Mercyville Sanitarium, Dr. Foster stated that, because of his emotional illness, plaintiff had been disabled for a period of more than one year prior to December 1968. This statement proved to be of little value to plaintiff inasmuch as the Act requires a period of disability continuing from on or before the last date of insured status to not less then 14 months prior to the date of application for disability.[2]

Since the plaintiff failed to meet his initial burden of showing a medically determinable disability, the Secretary was under no obligation to come forward with substantial contradictory evidence, even though such evidence was apparent throughout the record in the instant case. See *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir. 1973). We hold, therefore, that the entire record substantially supports the Secretary's final determination on remand that plaintiff was not under a disability within the meaning of the Act from December 31, 1968 to January 1970. Accordingly, we grant defend-

ant's motion for summary judgment and deny plaintiff's motion.

---

2.  § 416(i)(2)(D)(ii) provides [for the person whose disability ends prior to age 65] that a period of disability shall end with the close of the second month following the month in which the disability ceases.