811 F.2d 607
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William NOWACKI, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1019.
 United States Court of Appeals, Sixth Circuit.
 Dec. 4, 1986.
 
 Before LIVELY, Chief Judge, and WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 William Nowacki appeals from the district court's judgment affirming the Secretary's determination that Nowacki is not disabled and is therefore not entitled to disability benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 On September 4, 1981, Nowacki filed an application for disability benefits and supplemental security benefits claiming that he was disabled as of August 1, 1980 due to emotional problems. His claim was denied initially on October 8, 1981 and upon reconsideration on December 7, 1981. Nowacki subsequently requested and was granted a hearing before an Administrative Law Judge (ALJ).
 
 
 3
 The hearing was held on August 19, 1982. Nowacki testified at the hearing as to his personal history, his work history and his ailments. Nowacki was born on October 4, 1952. He has a high school education and one and a half years of college education. He last worked in May, 1980 as a housekeeper (janitor) for a nursing home. This employment, lasting approximately five months, was terminated due to his failure to show up for work and for taking time off. His prior work experience includes employment as a co-assistant manager of a nursery from approximately June, 1978, to August, 1979 and employment as a shipping-receiving clerk for Montgomery Wards from 1973 to November, 1977. He was also employed for some period of time as a stockman for a commercial warehouse.
 
 
 4
 Nowacki testified that his problems with depression, being alone, and not having very many friends prevent him from performing some type of job. He had been taking Mellaril; however, his doctor had discontinued this medication approximately one month prior to the hearing because Nowacki had the reaction of being very drowsy and sleepy. Nowacki stated that his depression occurs at least once a day, possibly lasting the whole day, and that at least three or four times a week he has shaking spells that last from two hours to all day. He also stated that nervous spells make him liable to throw things, cry, and drink. When at home, Nowacki stated that he watches television or sits in a chair and looks out the window. He occasionally attends church and does not have any hobbies. He stated that his alcohol consumption is excessive once or twice a week depending on "how the money is" and how he is feeling. Nowacki further testified that approximately one year prior to the hearing he attended the Learning Assistance Center at Schoolcraft College for remedial help in learning and reading. He stated that his reading level had been tested and determined to be at the fourth grade level.
 
 
 5
 The following pertinent medical evidence was introduced at the hearing. Nowacki has a history of psychological problems beginning as late as 1974 when he was treated for a phobia of blood. He was admitted to Sinai Hospital on October 16, 1980, for psychiatric hospitalization, complaining of nervousness, chest pain and thoughts that his heart may be enlarging. On admission his affect was normal in depth, liability and appropriateness. He did not appear suspicious and denied ideas of reference, influence, or grandiosity as well as delusions or hallucinations. He received individual and group therapy and the overall result was a decrease in his anxiety level. He was discharged on December 3, 1980 with a tentative psychiatric diagnosis of borderline personality. At this time his medication consisted of Mellaril for anxiety and tetracycline for acne. Out-patient treatment under Dr. Popovic and vocational rehabilitation were the therepeutic recommendations. He attended Sinai's Day Hospital from December 13, 1980 until April 17, 1981, at which point he was discharged and referred to vocational rehabilitation for evaluation. At the time of discharge, Dr. Popovic was of the opinion that Nowacki was unemployable and totally dependent on his parents. Dr. Popovic also noted that Nowacki had a history of marked alcohol abuse. The record also contains a psychiatric evaluation prepared by Dr. Popovic on September 16, 1981. However, this evaluation was based on Dr. Popovic's last contact with Nowacki, which was in April, 1981, some five months prior to the evaluation date and therefore it contains little objective evidence in regards to disability. The diagnosis was one of an emotional disorder and the prognosis was guarded.
 
 
 6
 Nowacki underwent a psychiatric evaluation on November 24, 1980 performed by Dr. Hanheung Lee, M.D., a specialist in psychiatry. Dr. Lee's report stated that there was no gross impairment in reality contact, that speech was spontaneous and clear, that there were no indications of hallucinations or delusions, and that there was orientation in time, place and person. Dr. Lee did note that Nowacki appeared very angry for no particular reason and looked depressed. The diagnosis was passive aggressive personality disorder. The prognosis was fair. This evaluation was performed with regard to a prior application of Nowacki for disability benefits dated September 8, 1980 which was denied. The decision on this prior application was not appealed by Nowacki, and is not now before the court.
 
 
 7
 Dr. Lee examined Nowacki again on November 21, 1981 with regard to the present application for disability benefits. He was uncooperative during the evaluation, blaming Dr. Lee for his previous denial of disability benefits. Dr. Lee noted that Nowacki had no indication of impairment of reality contact or of delusions. However, he did appear somewhat depressed and very angry for no particular reason. He was oriented in place, time and person. The diagnosis was passive agressive personality disorder and the prognosis was fair.
 
 
 8
 Nowacki submitted a fourth psychiatric evaluation which was performed on September 16, 1981. The examining physician's name is not legible and cannot be determined. The report's diagnosis mirrors Dr. Lee's diagnosis of passive aggressive personality disorder. The prognosis was fair to guarded. The report noted that Nowacki had no delusions, ideations or hallucinations and that he had good contact with reality with orientation times three. It was also noted that he had recurrent depression with anxiety and agitation; however, there were no suicidal attempts or ideations.
 
 
 9
 The record contains letters dated May 7 and 12, 1982, from W. John Baker, M.A., a staff psychologist at Suburban West Community Center stating that Nowacki had been receiving out-patient treatment for psychological problems since August 4, 1981. Mr. Baker noted that Nowacki had been treated for a variety of problems ranging from extreme nervousness to depression, and that he was not on a medication regime at that time although he had previously been treated with medication. Mr. Baker declined to predict his readiness for full time competitive employment because he had been seeing Nowacki for only a few weeks.
 
 
 10
 Nowacki was evaluated by The Michigan Department of Rehabilitation Services on August 24, 1981 and on June 10, 1982. On each occasion he was denied services because it was determined that he was not ready for competitive employment at that time. However, these letters do not go into the reasons behind the decisions.
 
 
 11
 An evaluation report by Dr. Zerrudo prepared by Dolores Gardner, M.S.W., of the Suburban West Community Center on August 4, 1981, concluded that Nowacki suffered from anxiety and possibly a borderline personality.
 
 
 12
 A letter dated August 19, 1981 from the Jewish Vocational Service and Community Workshop stated that Nowacki has the ability to perform a variety of jobs, such as sorting, inspecting, measuring, manipulating, feeding-offbearing, handling and tending. However, it was the opinion of a staff psychologist that he would not be as effective in a work situation as he might be due to certain adjustment problems. Therefore, it was recommended that he seek psycho-therapeutic services from a local mental health facility.
 
 
 13
 Nowacki underwent reading tests at the Galbraith Reading Clinic in Warren, Michigan, on November 4, 1966 when he was in ninth grade and on May 27, 1982. The 1966 report found him to be of average intelligence but performing considerably below grade placement. The 1982 report found him to have average intelligence and not normal vision. Daily patterning exercises were recommended to help him overcome his vision difficulties.
 
 
 14
 Nowacki received an eye examination on September 2, 1982 and a visual therapy evaluation on November 3, 1982. As a result of these tests he was prescribed glasses to correct his vision and recommended a program of visual therapy to minimize his visual stress.
 
 
 15
 A vocational expert testified at Nowacki's hearing. The expert testified that Nowacki had performed semi-skilled, heavy work and unskilled, medium to heavy work over the last 15 years. He considered Nowacki vocationally qualified to perform only unskilled work. The expert did state that Nowacki would not be able to perform his past work or any other work existing in the national economy if the ALJ found all the facts of impairments per testimony to be true.
 
 
 16
 On December 17, 1982, the ALJ issued his decision, finding that Nowacki was not entitled to disability benefits pursuant to 42 U.S.C. Secs. 416(i), 423 and 1381a. The ALJ found that Nowacki's impairments consisted of a personality disorder, passive aggressive and a learning disability--however, he concluded that they did not meet the severity of an impairment listed in Appendix 1, 20 C.F.R. Sec. 404, subpt. P. He further found Nowacki capable of performing a full range of unskilled work and capable of performing his past work as a stockman and janitor (housekeeper in nursing home). He also found Nowacki's testimony concerning his subjective complaints not credible and not supported by the medical evidence of record.
 
 
 17
 Nowacki timely filed the instant action with the district court pursuant to 42 U.S.C. Sec. 405(g). Nowacki filed a motion for summary judgment which was referred to a magistrate. The magistrate filed his report and recommendation on July 26, 1985, recommending entry of summary judgment in favor of the Secretary. The district court adopted the magistrate's report and affirmed on October 31, 1985. This timely appeal followed.
 
 II.
 
 18
 Pursuant to 42 U.S.C. Sec. 405(g), the Secretary's factual findings are conclusive if supported by substantial evidence. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971). This court cannot base its decision entirely upon a single piece of evidence; the record must be evaluated as a whole. Hephner v. Mathews, 667 F.2d 524 (6th Cir.1981).
 
 
 19
 This deferential standard of review applies only to resolving issues of fact and credibility. Wiggins v. Schweiker, 679 F.2d 1387 (11th Cir.1982). See also Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir.1978). Even if the reviewing court would resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058 (6th Cir.1983).
 
 
 20
 Eligibility for social security disability benefits payments is determined pursuant to a five-step sequential evaluation process. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 528 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). The fourth step requires inquiry into whether the claimant can perform past relevant work; if so, then the claimant is not disabled. Kirk, supra. Nowacki argues that the determination by the Secretary that he is able to perform a full range of unskilled work, including his past work, and therefore is not disabled is erroneous. Nowacki relies on the medical reports in the record as establishing uncontroverted evidence of a disability, and claims that the ALJ ignored these records in concluding that his subjective complaints concerning his psychological "pain" impairments were not credible. Nowacki accuses the ALJ of incorrectly relying solely upon his personal observations of Nowacki to rebut the contrary evidence. See Helms v. Califano, 473 F.Supp. 1329, 1334 (W.D.N.C.1979).
 
 
 21
 The determination as to Nowacki's credibility is of great importance in the instant case in light of the fact that the vocational expert testified that if Nowacki's complaints per testimony were true he would be unable to perform work existing in significant numbers in the national economy. The vocational expert identified the complaints of depression, nervousness, and alcoholism as the significant vocationally limiting factors.
 
 
 22
 While it is true that the ALJ based his determination of credibility in part on his own personal observations during the hearing, the ALJ also found that the medical evidence of record did not support Nowacki's claim of suffering from a severe psychiatric condition or alcoholism. As noted by the ALJ, Nowacki is not taking any anti-depressant medication and there is no evidence of recent hospitalization for severe depression. Psychiatric reports of Dr. Lee found Nowacki to be in good contact with reality with orientation in time, place and person, as did the unsigned psychiatric report dated September 16, 1981. In addition, the medical record does not contain any evidence of a diagnosis of alcoholism or of alcohol abuse treatment. Furthermore, Nowacki was hospitalized for a period of approximately two months and although the records at this time indicate a past history of alcohol abuse based on Nowacki's statements of alcohol consumption in prior years, there was no indication of a present alcohol problem. In sum, after complete review of the pertinent evidence, we find that the ALJ did not base his opinion of Nowacki's complaints solely upon his own personal observations while ignoring uncontroverted testimony and medical evidence of severe depression and alcoholism and we are unpersuaded that we should discard the ALJ's determination that Nowacki's complaints are not credible.
 
 
 23
 Nowacki also contends, citing Dillon v. Celebrezze, 345 F.2d 753 (4th Cir.1965), that the ALJ improperly fractioned his multiple impairments and determined disability on the basis of each isolated medical problem, rather than looking at the total effect of all of his impairments. However, this argument loses force in light of the ALJ's determination that Nowacki is not suffering from a severe psychiatric condition or alcoholism. If an impairment is found not to exist it can hardly be argued that it must be considered when assessing the combined effects of impairments.
 
 
 24
 As previously noted, the ALJ found Nowacki's impairments to be a passive aggressive personality disorder and a learning disability. However, the record clearly demonstrates that Nowacki has held jobs while suffering from his learning disability in addition to obtaining a high school degree and attending a year and one-half of college. Additionally, the Jewish Vocational Service and Community Workshop found Nowacki capable of learning simple factory jobs, albeit acknowledging that he might have difficulty in retaining a job at that time due to certain adjustment problems. Furthermore, the vocational expert stated that Nowacki could return to appropriate employment in the community with appropriate rehabilitation services. This evidence fully supports the ALJ's finding that Nowacki's impairments do not prevent the performance of a full range of unskilled work, including his past work. Therefore, pursuant to 20 C.F.R. Secs. 404.1520(e) and 416.920(e), a finding of not disabled must be made.
 
 
 25
 Having concluded that substantial evidence supports the Secretary's decision to deny disability benefits to Nowacki, we accordingly AFFIRM the judgment of the district court.