**Robert G. JONES, Plaintiff,**

v.

**Otis BOWEN, M.D., Secretary of Health and Human Services of the United States of America, Defendant.**

**No. 85–4164.**

United States District Court,
C.D. Illinois,
Rock Island Division.

March 9, 1987.

John A. Bowman, Davenport, Iowa, for plaintiff.

Bradley Murphy, Asst. U.S. Atty., Peoria, Ill., for defendant.

## ORDER

MIHM, District Judge.

The Plaintiff, Robert Jones, filed suit against the Secretary of the United States Department of Health and Human Services ("the Secretary") seeking review under 42 U.S.C. § 405(g) of a final decision by the Secretary which denied him entitlement to a disability period and disability insurance benefits.

In order to qualify for a period of disability insurance benefits under the Social Security Act ("Act"), an individual must meet the insured status requirements under the Act, be under the age of sixty-five, file an application for disability insurance benefits and a period of disability, and be under a disability as defined in the Act. 42 U.S.C. §§ 416(i), 423; *Griffin v. Weinberger*, 407 F.Supp. 1388, 1392 (N.D.Ill.1975), aff'd. 539 F.2d 712 (7th Cir.1976). The determination of a disability which entitles a claimant to benefits under the Act is a two-step process:

1. There must be a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months or be expected to result in the death of the claimant; and

2. There must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment.

*McNeil v. Califano,* 614 F.2d 142, 143 (7th Cir.1980); *Lieberman v. Califano,* 592 F.2d 986 (7th Cir.1979); 42 U.S.C. 423(d)(1)(A).

The burden of proof is on the claimant to establish his or her entitlement to disability insurance benefits. *Jeralds v. Richardson,* 445 F.2d 36 (7th Cir.1971). However, once he has shown that he can no longer perform the kind of work in which he was previously engaged, the burden shifts to the Secretary to prove that there are other jobs which the claimant can perform and that such jobs exist in significant numbers in the national economy. *Stark v. Weinberger,* 497 F.2d 1092 (7th Cir.1974).

■ Judicial review of an Administrative Law Judge's findings pursuant to these standards is limited to a determination of whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Lechelt v. Cohen,* 428 F.2d 214 (7th Cir.1970). In determining whether the Administrative Law Judge's findings are supported by substantial evidence, the court must decide whether the record contains such relevant evidence as a reasonable person might accept as adequate to support the findings. *See Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is not the function of the court on review to try the case *de novo* or to supplant the Administrative Law Judge's findings with the court's own assessment of the evidence. This court can only determine whether the Administrative Law Judge's findings were supported by substantial evidence. *Torres v. Secretary of Health and Human Services,* 677 F.2d 167 (1st Cir.1982); *Cummins v. Schweiker,* 670 F.2d 81 (7th Cir.1982).

■ If there is a conflict in the evidence, the burden is upon the claimant to prove that he or she meets the requirements of eligibility. *Johnson v. Weinberger,* 525 F.2d 403, 407 (7th Cir.1975). In addition, an Administrative Law Judge's credibility determination regarding subjective evidence should be given considerable weight by the court. *Bibbs v. Secretary of Health, Education & Welfare,* 626 F.2d 526, 528 (7th Cir.1980).

■ The district court must consider four elements of proof in determining whether a claimant is disabled under the Act: (1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and as observed by others; and (4) the claimant's age, education, and work history. *Johnson v. Weinberger,* 525 F.2d at 407.

The Plaintiff, Robert G. Jones, applied for disability insurance benefits on November 1, 1983. Plaintiff's claim was denied initially, on reconsideration, and after a *de novo* hearing before an Administrative Law Judge in an order dated January 25, 1985. The Appeals Council denied the Plaintiff's request for review on May 30, 1985, at which time the ALJ's decision denying the Plaintiff benefits became the final decision of the Secretary of Health and Human Services.

Mr. Jones alleges that he is disabled due to severe pain that occurs mainly in his chest area. He testified at the hearing before the ALJ that he has experienced the pain for more than nine years, and, even though it can be caused by exertion, many times it is non-exertional in nature. Mr. Jones testified that the pain prevents him from sleeping properly and that his overall situation in life has caused him to become angry, depressed, and frustrated.

After considering the evidence in the record and the testimony of the claimant, the ALJ reached the following conclusions:

* The claimant met the disability insured status requirements of the Social Security Act on April 29, 1983, and the claimant has not engaged in

substantial gainful activity since April 29, 1983.

* The medical evidence establishes that the claimant has severe chest pain of unknown etiology (non-cardiac) but that he does not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4.

* The claimant's testimony concerning the severity and frequency of his chest pain and concerning the resulting limitations on his ability to engage in basic work activities on a sustained basis is not supported by the objective medical evidence of record, the claimant's testimony concerning his daily activities, or by the testimony of the claimant's wife. The claimant's testimony concerning his chest pain and limitations is not found credible to the extent alleged. The claimant's testimony indicates that his chest pain is controlled by appropriate medication with no side effects and the objective medical evidence of record does not indicate that the claimant's pain is of such character or dimension as to significantly interfere with the performance of a very wide range of medium work.

* The claimant has the residual functional capacity to perform the physical exertion and non-exertional requirements of work including being able to lift and carry at least 50 pounds and stand and walk for prolonged periods. However, the claimant is unable to climb or crawl more than occasionally (20 C.F.R. 404.1545). The claimant is unable to perform his past relevant work as a combine repairman, forklift operator, or laborer in the farm equipment manufacturing industry. The claimant's residual functional capacity for the full range of medium work is reduced by the non-exertional limitations of being unable to climb or crawl more than occasionally.

* The claimant is 49 years old, which is defined as a younger individual (20 C.F.R. 404.1563). He has a limited education, and in view of his age and residual functional capacity, the issue of transferability of work skills is not material. Based on an exertional capacity for medium work, the claimant's age, education, and work experience, the Regulations found in § 404.-159 and Rules 203.26 and/or 203.27, Table No. 3, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of not disabled. The claimant's capacity for the full range of medium work has not been significantly compromised by his additional non-exertional limitations. Therefore, using the above-cited rules as a framework for decision making, the claimant is not disabled.

The medical evidence in the record shows that the claimant has a history of chest pain since approximately 1975. In February of 1983, the Plaintiff underwent a carotid ultrasonography to determine the extent of arteriosclerosis in his carotid arteries. Dr. F.J. Forlini indicated that there was minimal arteriosclerotic changes of the right common carotid and carotid bulb but that the left had some soft and hard plaque of the lateral wall with evidence of minimal interblock hemorrhage.

A month later, the Plaintiff underwent a treadmill stress test. Dr. Forlini indicated that even though there was some "clinical chest discomfort," during the test, the results of the test were normal. In a letter dated May 3, 1983, Dr. Forlini indicated that following the treadmill stress test, Mr. Jones was placed on a 10 to 15 day course of Flexeril and the results of that treatment were good. After discussing the results of some tests he had performed on Mr. Jones, Dr. Forlini indicated that he thought the patient's present constricted or compressive type of chest discomfort was not from coronary artery disease or spasm but secondary to muscular skeletal mechanics problems. In this letter, Dr. Forlini referred Mr. Jones to Dr. Charles Andrews for a course of osteopathic manipu-

lation which he felt would benefit the patient's chest condition.

In July of 1983, Mr. Jones was readmitted to Franciscan Hospital. His coronary artery was found to be within normal limits. But, during a cardiac catheterization procedure, he developed asystole and ventricular fibrillation. He had a short period of unconsciousness but was resuscitated and developed no sequellae. His post-catheterization electrocardiograms were within normal limits with no significant abnormalities noted. He was released from the hospital 48 hours after the catheterization and placed on a regimen of nitroglycerin patch.

Dr. Forlini followed this examination with a letter on August 8, 1983 to Dr. R.E. Kerber at the University of Iowa Hospital, because of the unusual symptoms of the patient. In that report, Dr. Forlini explained that cardiac catheterization revealed normal coronary arteries and that Mr. Jones has no overt spasm that has been demonstrated and no fixed obstructive disease. Nevertheless, Dr. Forlini reported that the patient continues to have chest pain on an intermittent basis and has also developed a squeezing, clutching feeling within his throat. Dr. Forlini described the effect of certain drugs on Mr. Jones' condition and stated that nitroglycerin patches have definitely improved him.

Dr. Kerber also wrote a report following his examination of the patient on August 30, 1983. Dr. Kerber indicated that Mr. Jones was in no distress and that the results of an electrocardiogram and chest x-ray were normal, but an echocardiogram revealed probable bicuspid aortic valve. The final diagnosis of Dr. Kerber was that the patient suffered from: (1) chest pain, undetermined etiology, possible esophageal spasm, no evidence of coronary artery disease, and (2) bicuspid aortic valve, unrelated to chest pain.

Dr. Adrian Feinerman, performed an examination of the patient in December of 1983. Dr. Feinerman reported on the patient's history of chest pain and medical tests and indicated that the characteristics of the pain were atypical of angina because of the variable character of the pain. Dr.

Feinerman did not perform a stress electrocardiogram because of the variable nature of the pain. Dr. Feinerman found no evidence of gross cardiac decompensation and found that the patient walks normally without the aid of an assistive device and had no impairment of his senses. Dr. Feinerman concluded that the claimant suffered from chest pain of an unknown etiology.

Dr. Charles Andrews, D.O., discussed the Plaintiff's condition in a letter dated February 20, 1984 to the State of Illinois Department of Rehabilitation Services. This report described Dr. Forlini's findings and the drug treatment which Dr. Forlini had prescribed for Mr. Jones. Dr. Andrews also indicated the results of his own physical examination, much of which focused on the patient's tenderness to palpitation along the thoracic segments anteriorally over the sternum, the left side of the cervical spine, and the ribs along the anterior axillary line representing anterior chest wall tenderness. Dr. Andrews noted that the patient had a 25 to 30 percent limitation of rotation toward the right and that when he rotated his head, he had discomfort along the right costo-sternal segments. Dr. Andrews stated that he treated the patient with manipulative therapy for those painful segments and that his tenderness to palpitation improved, even though the patient stated he still would have frequent episodes of chest pain. Eventually, the patient was treated with Nitro-disk Patches under his skin and continued manipulative therapy in late 1983, which resulted in less pain and tenderness of the musculoskeletal system. However, the patient "reported that he did still have unpredicted break through periods of angina-like pain which Dr. Forlini felt he would continue to have from time to time."

Finally, Dr. Forlini submitted a report dated November 6, 1984 for the ALJ to consider after he had held an oral hearing on Mr. Jones' claim. In that report, Dr. Forlini indicated that the patient is still complaining of multiple spells of chest and arm discomfort, particularly at night, but that if he takes his Isordil Tenbid at night he gets much less pain. Dr. Forlini stated

that the patient is having somewhere between five to eight attacks per day and that the chest pain disappears within two to three minutes when he takes nitroglycerin sublingually. Dr. Forlini concluded: "The patient's overall prognosis is unknown. He has clinical angina pectoris with normal coronary arteries. Employment future is nil."

In addition to the medical records in evidence, the ALJ also heard the testimony of the claimant, Robert Jones, and his wife, at a hearing at which the claimant was represented by an attorney. The claimant testified that he has had episodes of chest pain since 1985 which he attributed to an undersized coronary artery and spasms of the coronary arteries. He explained that the pain that was most severe was the pain he gets in his throat, which is a sharp hurting pain as if he had been struck in the throat. He described the pain in his chest as deep pain, not a real sharp tearing pain, and added that activity can sometimes bring on the pain, but that he also has pain spells when he is inactive or sleeping. He said that can experience these pain episodes from up to eight to ten times a day, although he does not necessarily have that many pain episodes every day. The nitroglycerin medication does help alleviate the pain, with no side effects.

Mr. Jones testified that he can still drive and that in July of 1983 he took a 2,300 mile trip to Colorado and back. He explained that he did not drive during this trip, and that they made frequent stops, but that was due to his grandchildren who accompanied him on the trip. He did not indicate that it was necessary to stop the car and rest due to his episodes of chest pain. The claimant testified that he is able to mow the lawn with a riding lawnmower, that he goes shopping, and that he visits with his children and grandchildren every day. Mr. Jones testified that he can walk up to six blocks without any discomfort, but that sometimes the pain will come on even sooner and he will not be able to go even that far. Mr. Jones does not have any hobbies and testified that he is presently unable to do much work around the house or work on cars as he used to do in the past.

The claimant's wife also testified, and she indicated that Mr. Jones turns gray when he is having a spell of chest pain and that he experiences chest pain and shortness of breath when he tries to climb stairs or exert himself for any period of time. The claimant's wife stated that he does not have episodes of chest pain every day, but he does have them frequently during the week.

In arguing that this Court should reverse the judgment of the ALJ, the Plaintiff sets forth four separately identified issues, any of which, he contends, forms the basis for reversal. The Court will address the first three of these issues separately; however, the fourth issue identified by the Plaintiff is a claim that the ALJ's decision did not provide a basis for determining if he applied the correct legal standards in making his decision. This argument by the Plaintiff is very vague and not supported by any specific claims other than the arguments raised by the other sections of the Plaintiff's motion and supporting memoranda.

As a general matter, the ALJ's decision does involve a detailed discussion of the evidence and it shows that he considered this evidence along with the criteria for determining disability set out by the Social Security Statutes and Regulations. As the Seventh Circuit pointed out in *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985), an ALJ's opinion does not have to evaluate in writing every piece of evidence and testimony submitted. The Court explained that the purpose of the ALJ's opinion is to enable a reviewing court to trace his or her reasoning and to assure the court that the ALJ did consider and make some type of assessment of the evidence. To the extent that the Plaintiff's fourth issue raises a claim that the ALJ failed to develop the medical evidence and, as a result, wrote an incomplete opinion, the Court finds it is without merit. To the extent that these very vague and general claims made by the Plaintiff in his issue number four overlap with the issues he raises in his other arguments, the Court

will consider those claims in its discussion of the other three issues.

As the first ground for reversal, the claimant argues that the ALJ's finding that the claimant did not have an impairment or combination of impairments listed in Appendix 1, Subpart P, Regulations No. 4 is not supported by substantial evidence. As part of this discussion, the claimant argues that the ALJ applied an improper legal standard in that he did not consider the combined effects of all of the claimant's impairments.

Turning first to the Plaintiff's contention that the ALJ failed to consider the combined effects of the claimant's impairments, the Court accepts the Plaintiff's position that the "law clearly requires the Social Security Administration to consider the combined effects of all of a claimant's impairments in determining whether the claimant is disabled." *Johnson v. Heckler*, 769 F.2d 1202 (7th Cir.1985); § 4 of the Social Security Disability Benefits Reform Act of 1984, Db.L. 98–860; 20 C.F.R. § 404.1523. However, this legal argument is not relevant to the facts of the present case because there is no indication from the record that the Plaintiff ever suggested that he was suffering from impairments other than the severe chest pain discussed by the ALJ. In his brief, the Plaintiff suggests that the ALJ did not consider the combined effects of all of his impairments, but nowhere in that section of the brief does the Plaintiff point to any evidence which suggests the existence of other impairments. Toward the end of his brief, the Plaintiff notes that the ALJ never considered the claimant's possible mental retardation or the Plaintiff's inability to read well, suggesting that these impairments were not considered by the ALJ. However, the Court's review of the record shows that at no time did the claimant suggest to the ALJ that he had a mental impairment as well as the chest pains about which he testified.

The ALJ cannot be expected to act as an oracle and divine the condition of the claimant without being told of problems he is experiencing. The claimant cannot expect the ALJ to launch into a full-blown inquiry into his mental capabilities merely because he suggests that his education is very limited and that he can barely read; while illiteracy is indeed a serious problem, it does not always follow that someone who is illiterate is necessarily suffering from a physical or mental impairment. The claimant failed to raise his mental condition as an impairment that caused or contributed to his disability, and the ALJ proceeded to decide the case which was presented to him. On the basis of the record and the pleadings, the Court concludes that the ALJ correctly considered the effects of the claimant's chest pains, because the claimant did not present him with evidence of any other impairments.

As for the Plaintiff's contention that the ALJ was in error in concluding that the claimant's condition did not meet or exceed the conditions listed, the Court concludes that the ALJ's decision is supported by substantial evidence. As set forth in the beginning of this Order, almost all the tests performed on the Plaintiff from 1975 until 1983 resulted in normal or near normal findings. The record is replete with statements by various physicians that the claimant's chest pains are probably *not* cardiac in nature. While this does not resolve the question of how much pain the claimant is feeling, it does at least suggest that the pains are not an indication of a life-threatening trauma.

Furthermore, the ALJ observed the claimant at the hearing and heard his testimony about the chest pains he has been experiencing. The ALJ found that the claimant's testimony with regard to the severity and duration of the chest pains was not supported by the claimant's testimony about his daily activities and the medical evidence which found no cardiac cause for the pain. The ALJ specifically mentioned the report which detailed the Plaintiff's inability to crawl or climb, but found that these limitations did not significantly compromise his ability to perform medium work.

The only evidence to the contrary was Dr. Forlini's report of October 26,

1984, which stated, "Employment future is nil." Disability is a legal determination to be made by the ALJ, not a Plaintiff's physician, and, therefore, Dr. Forlini's conclusion is evidence but is not determinative of the issue. Moreover, the ALJ could take into consideration that the doctor was well aware that legal proceedings were underway when he wrote this report. The validity of this statement is open to question because no explanation accompanies it—the statement does not mention whether the doctor believes all future employment is foreclosed, or only a return to his former jobs.

The ALJ, not the district court, is to act as the fact finder, which includes making determinations about the relative credibility of witnesses and the weight to be given particular pieces of evidence. The ALJ found the medical evidence did not support the claimant's testimony with regard to duration and intensity of pain, and there is nothing in the record to contradict such a conclusion. Whether or not the Court would have reached the same conclusion, the Court finds that the ALJ's decision that the impairments did not meet or equal the listing of impairments in the Social Security Regulations is supported by substantial evidence.

The claimant also argues that the ALJ erred in applying 20 C.F.R. 404.1520(c) in his analysis, because that regulation is incompatible with the statutory definition of disability. The regulation requires the ALJ to determine whether an impairment or combination of impairments is severe, and, if it is not, then the ALJ is to reach a finding of no disability. According to the claimant, this is in conflict with 42 U.S.C. § 423(d)(1)(A) and (d)(2)(A) because those statutes do not distinguish between severe and non-severe impairments. Rather, the statutes which define disability refer to "*any* medically determinable physical or mental impairment" which renders one unable to engage in any substantial gainful activity (emphasis added).

The Plaintiff correctly points out that a number of courts have invalidated these severity regulations on the basis of their conflict with the statute, including the Seventh Circuit Court of Appeals. However, this approach is unavailing to the Plaintiff's claim for relief, because the ALJ found that the claimant's disabilities were severe, and the ALJ continued on with the five step analysis used to determine disability. According to cases such as *Johnson v. Heckler*, 769 F.2d 1202 (7th Cir.1985) and *Baeder v. Heckler*, 768 F.2d 547 (3rd Cir. 1985), the problem with the regulations is that they do not allow a plaintiff suffering from non-severe impairments to show that because of other factors, age, education, and work ability, he or she is unable to engage in substantial gainful activity. Such an analysis has no place in the present case, because the claimant was not foreclosed from further inquiry on the basis of a non-severe limitation. To the contrary, the ALJ found the Plaintiff not disabled only after going through all five steps of the regulatory analysis. Therefore, the Court finds this contention of the Plaintiff without merit.

■ Finally, the Plaintiff argues that the ALJ erred in applying the grid, 20 C.F.R., Pt. 404, Subpart P, Appendix 2, because the Plaintiff was suffering from non-exertional as well as exertional limitations. The Plaintiff argues that he suffered from non-exertional limitations caused by pain and possible mental retardation, and these non-exertional limitations should have foreclosed the ALJ from relying upon the grid in making his disability determination.

This argument by the Plaintiff overlooks the fact that the ALJ did expressly find that the Plaintiff's capacity for the full range of medium work was not significantly compromised by his non-exertional limitations. According to the Seventh Circuit in *Nelson v. Secretary of Health and Human Services*, 770 F.2d 682, 685 (7th Cir. 1985):

"The fact that a claimant suffers from a non-exertional impairment does not, however, immediately preclude utilization of the grid. '[B]efore reaching the conclusion that the grid will not be applied because [the] claimant alleges non-exertional limitations, those non-exertional

limitations must be severe enough to restrict a full range of gainful employment at the designated level.' *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 537 (6th Cir.1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983)."

The ALJ made a finding that the claimant's capacity to perform a full range of medium work has not been significantly compromised by his additional non-exertional limitations. Thus, the decision of the ALJ meets the standard announced by the Seventh Circuit in *Nelson.* Moreover, the findings of the ALJ show that he did not use the grid to "direct" a conclusion, but rather used it as a "framework" for decision-making. In paragraph 11 of his findings, the ALJ said that the grid "would direct a conclusion of 'not disabled.'" The ALJ's use of the word "would" indicates that the ALJ was not using the grid to direct a conclusion, but was indicating what the outcome would be if all of the conditions described by the ALJ with regard to the claimant's residual functional capacity, age, work experience, and education were met. The ALJ then went on in paragraph 12 to acknowledge the existence of non-exertional limitations, but he found that these did not significantly affect the Plaintiff's ability to perform medium work. Additionally, he expressly stated that he was using the grid as a framework for his decision-making, as described in 20 C.F.R., Appendix 2 to Subpart P, 200.00(E)(2).

In his findings, the ALJ specifically indicated that the non-exertional limitations upon the claimant's residual functional capacity to perform the full range of medium work involved his inability to climb or crawl more than occasionally. Because these are the only non-exertional limitations mentioned by the ALJ, the Court can only assume that the ALJ found that the claimant's complaints of pain were not sufficiently credible to convince the ALJ that the pain limitations significantly affected his capacity to work. Such an assumption is reasonable in light of the ALJ's express finding that:

"The claimant's testimony concerning the severity and frequency of his chest pain and concerning the resulting limitations on his ability to engage in basic work activities on a substantial basis is not supported by the objective medical evidence of record, the claimant's testimony concerning his daily activities, or by the testimony of the claimant's wife and is not found credible to the extent alleged."

In evaluating this decision, the Court is convinced that the ALJ's conclusion is supported by substantial evidence. The doctors have been unable to find a specific cause for the Plaintiff's chest pains, let alone a cardiac etiology. Additionally, the ALJ found, based on the claimant's own testimony in the medical documents, that treatment with medication has improved the Plaintiff's condition or does a great deal to alleviate the pain quickly without side effects. Based on this, the ALJ found that the Plaintiff's complaints of pain were not credible to the full extent he described them. Even if the ALJ incorrectly concluded that the claimant could do medium work, it appears that the same result of "not disabled" would follow if the Plaintiff could only do light or sedentary work.

The end result of all this is that the Court finds that the ALJ's decision that the claimant is "not disabled" for purposes of the Social Security Act is supported by substantial evidence in the record. The Court orders that the decision of the ALJ is AFFIRMED.